907 A.2d 1114 (2006)
In the Interest of J.E., A Minor.
Appeal of J.E.
Superior Court of Pennsylvania.
Submitted January 3, 2006.
Filed September 8, 2006.
*1116 Carrie L. Allman, Public Defender, Pittsburgh, for E.J., appellant.
Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for Com., appellee.
BEFORE: TODD, McCAFFERY, and JOHNSON, JJ.
OPINION BY JOHNSON, J.:
¶ 1 J.E., a minor, appeals from the juvenile court's commitment order confining him to Youth Forestry Camp following a finding that he had committed delinquent acts and violated his probation. The juvenile court adjudicated J.E. delinquent for possession of a firearm by a minor and possession of a firearm without a license, after a probation officer found a firearm under the mattress where J.E. had been sitting. J.E. argues that the juvenile court erred in denying his motion to suppress the firearm and adjudicating him delinquent for carrying a firearm without a license where J.E., as a minor, was ineligible to obtain a valid firearm license. After study, we find that the juvenile court erred in denying J.E.'s motion to suppress the firearm as the probation officer did not have a reasonable suspicion that J.E. had engaged in criminal activity or that J.E. was in violation of his probation. Accordingly, we reverse the juvenile court's commitment order and remand the case back to the juvenile court.
¶ 2 On February 10, 2005, Probation Officer Greg Willig went to a residence in the Beltzhoover section of Pittsburgh. Officer Willig was accompanied by Probation Officers Ray Bauer, Christine Lisko, and Robert Dassel along with Pittsburgh Police Officers J. Gagliardi and G. Scafeda. The officers went to the residence to serve an arrest warrant on J.E.'s brother ("Brother"), a juvenile. J.E.'s stepmother ("Stepmother") answered the door and informed the officers that Brother was not home but that J.E. was upstairs in his bedroom. Officer Willig told Stepmother that the officers would still need to search the house for Brother.
¶ 3 Officer Willig, along with two other probation officers, went upstairs and found J.E. in his third-floor bedroom sitting on the edge of his bed watching television. Officer Willig told J.E. to stand up and then conducted a pat-down search. During the pat-down, Officer Willig stated that J.E. was very nervous and shaking. This raised Officer Willig's suspicion that J.E. was hiding something. Officer Willig then lifted up the mattress on which J.E. had been sitting and found a gun.
¶ 4 On March 23, 2005, the Commonwealth filed a juvenile petition charging J.E. with one count each of possession of a firearm by a minor and possession of a firearm without a license. The Honorable Jill Rangos held a hearing on April 14, 2005. At the hearing, Officer Willig testified as to the search and seizure of the handgun. Officer Willig testified that he was the probation officer in charge of warrants for the county and that he was aware that J.E. was on probation. Based on prior experience, Officer Willig stated that when a juvenile is placed on probation, *1117 he/she is required to sign a conditions of supervision form which includes a consent to a search of his/her person at any time. Officer Willig further testified that he routinely frisks juveniles who are on probation when they are present during the service of a warrant as a way to ensure the safety of the officers present. Officer Willig also stated that prior to the pat-down search, he had heard from an unknown informant that J.E. may have been involved in a shooting in Beltzhoover.
¶ 5 At the conclusion of Officer Willig's testimony, J.E. moved to suppress the evidence and for a directed verdict in his favor. The juvenile court denied both motions. Stepmother then testified that J.E. suffered from a shaking disease for which he had received medical treatment. No medical evidence was introduced and the juvenile court found this testimony to be unpersuasive. The juvenile court found that the Juvenile Act grants probation officers the right to search a juvenile on probation and that the probation officer had reasonable suspicion to search J.E. As a result, the juvenile court found that the Commonwealth had made a prima facie case for the charges of possession of a firearm by a minor and possession of a firearm without a license. The juvenile court found J.E. delinquent and in violation of his probation.
¶ 6 J.E. now appeals, raising the following questions for our review:
I. DID THE TRIAL COURT ERR IN DENYING J.E.'S MOTION TO SUPPRESS THE FIREARM WHERE THE GUN WAS FOUND AS A RESULT OF JUVENILE PROBATION OFFICERS DECIDING TO DO AN UNWARRANTED AND UNREASONABLE SEARCH OF J.E. AND HIS SURROUNDING AREA, AND WHERE SUCH A SEARCH VIOLATED J.E.'S PRIVACY RIGHTS AS GUARANTEED BY THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS?
II. DID THE TRIAL COURT ERR IN ADJUDICATING J.E. DELINQUENT OF THE CRIME OF POSSESSION WITHOUT A LICENSE WHERE IT IS UNREASONABLE TO EXPECT THAT A MINOR COULD EVER HAVE A VALID FIREARM LICENSE?
Brief for Appellant at 5.
Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.
Commonwealth v. Bomar, 573 Pa. 426, 826 A.2d 831, 842 (2003) (citations omitted).
¶ 7 In support of his first argument, J.E. contends that the juvenile court erred in denying his motion to suppress the firearm. Brief for Appellant at 11. J.E. argues that the probation officers conducted an unwarranted and unreasonable search of J.E. and his surrounding area in violation of the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *1118 Brief for Appellant at 17-18. Specifically, J.E. argues that he was not acting suspiciously and that the officers had no justification to believe that he was violating the terms of his probation. Brief for Appellant at 20-21. J.E. also argues that the protective sweep conducted by the probation officers was overly broad and did not meet constitutional requirements. Brief for Appellant at 18.
¶ 8 Initially, we conclude that the protective sweep doctrine is not applicable to this case. A protective sweep is "a quick and limited search of [the] premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (emphasis added). There are two levels of protective sweeps: (1) officers can, without probable cause or reasonable suspicion, look in closets and other spaces close to the place of arrest from which an attack could be launched and (2) officers can search for attackers further away from the place of arrest if they can sufficiently articulate specific facts that justify a reasonable fear for the safety of officers on the premises. See Commonwealth v. Taylor, 565 Pa. 140, 771 A.2d 1261, 1267 (2001). Here, the officers were in the residence based on a valid arrest warrant for Brother. However, the officers had not effectuated an arrest of Brother. As a proper protective sweep is based upon an initial arrest, we conclude the officers' search of the residence for Brother does not implicate the protective sweep doctrine. See Buie, 494 U.S. at 333, 110 S.Ct. 1093 (concluding that the Fourth Amendment allows arresting officers to conduct a protective sweep "to ensure their safety after, and while making, the arrest.") (emphasis added).
¶ 9 In the case at bar, the provisions of section 6304 of the Juvenile Act, which provides probations officers with the authority to search juveniles on probation, are controlling. Section 6304 states in relevant part:
(a.1) Authority to search. 
(1) Probation officers may search the person and property of children:
(i) under their supervision as delinquent children or pursuant to a consent decree in accordance with this section;
* * * *
(2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.
(3) No violation of this section shall constitute an independent ground for suppression of evidence in any proceeding.
(4) (i) A personal search of a child may be conducted by any probation officer:
(A) If there is a reasonable suspicion to believe that the child possesses contraband or other evidence of violations of the conditions of supervision.
* * * *
(vi) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with that case law, the following factors, where applicable, may be taken into account:
(A) The observations of officers.
(B) Information provided by others.
(C) The activities of the child.

*1119 (D) Information provided by the child.
(E) The experience of the probation officer with the child.
(F) The experience of probation officers in similar circumstances.
(G) The prior delinquent and supervisory history of the offender.
(H) The need to verify compliance with the conditions of supervision.
* * * *
(c) Definitions.  As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
"Personal search." A warrantless search of a child's person, including, but not limited to, the child's clothing and any personal property which is in the possession, within the reach or under the control of the child.
42 Pa.C.S. § 6304.
¶ 10 The statute allows probation officers to conduct warrantless personal searches of probationers. See 42 Pa.C.S. § 6304(c); see also Commonwealth v. Moore, 805 A.2d 616, 619-20 (Pa.Super.2002) (concluding that the requirement that a probation officer obtain a warrant based upon probable cause prior to conducting the search does not apply). However, section 6304 also stipulates that prior to a search of the child, a probation officer must have "a reasonable suspicion to believe that the child possesses contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S. § 6304(a.1)(4)(i)(A); see also Commonwealth v. Williams, 547 Pa. 577, 692 A.2d 1031, 1035-36 (1997) (concluding that a parolee is protected by the Fourth Amendment's requirement that searches be reasonable and that a search is reasonable if the parole officer had a reasonable suspicion that the parolee had violated his parole); Moore, 805 A.2d at 619.
¶ 11 Section 6304 enumerates factors to be considered in determining whether reasonable suspicion exists. Here, the juvenile court relied upon subsections (a.1)(vi)(A), (B), (C), (F), and (H) to demonstrate that Officer Willig had a reasonable suspicion to search J.E. and the area within his reach. Trial Court Opinion (T.C.O.), 8/29/05, at 8-9. The juvenile court focused on the fact J.E. was shaking during the pat-down search which demonstrated to Officer Willig that J.E. was hiding something. T.C.O, 8/29/05, at 6. However, the threshold question in cases such as this is whether the probation officer had a reasonable suspicion of criminal activity or a violation of probation prior to the personal search. See Florida v. J.L., 529 U.S. 266, 271, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (reiterating that police must have reasonable basis for suspecting person of engaging in unlawful conduct prior to the frisk). Here, the only information Officer Willig had prior to the personal search that J.E. had engaged in criminal activity is a tip indicating J.E. had been involved in a recent shooting. Notes of Testimony (N.T.), 4/14/05, at 30-31. However, Officer Willig could not articulate whether this information was from a known or anonymous informant. N.T., 4/14/05, at 31 ("I don't recall the source.").
¶ 12 A tip can establish a basis for reasonable suspicion; however, the officer must be able to articulate the reliability of the informant. See Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (concluding that an informant's veracity, reliability, and basis of knowledge are "highly relevant" in determining whether the informant has provided reasonable suspicion of criminal activity); see also Commonwealth v. Barber, *1120 889 A.2d 587, 593-94 (Pa.Super.2005). A known informant can form the basis for reasonable suspicion as the police would know the identity of the person providing the tip and the basis of the knowledge. See Commonwealth v. Hayward, 756 A.2d 23, 36 (Pa.Super.2000) ("Identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances.") (citation omitted). Unlike a tip from a known informant, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity[.]" Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If this information came from an anonymous tip, this tip must be sufficiently corroborated by independent police work to demonstrate that the tip was correct. See id. at 327, 110 S.Ct. 2412; see also Commonwealth v. Martin, 705 A.2d 887, 892 (Pa.Super.1997) ("A stop may be proper where the tip is sufficiently corroborated by independent police work giving rise to a reasonable belief that the tip was correct."). Here, Officer Willig does not point to any specific and articulable facts which would reasonably suggest that this tip was correct. Cf. Williams, 692 A.2d at 1037 (concluding that parole officer had reasonable suspicion to search property of parolee after receiving anonymous tip from confidential informant and corroborating the tip with the local police); Shaw v. Pennsylvania Bd. of Probation and Parole, 744 A.2d 382, 385 (Pa.Cmwlth.2000) (concluding that parole officer had a reasonable suspicion that the parolee had violated conditions of parole after officer received anonymous letter stating parolee was dealing drugs and officer observed the unemployed parolee driving a sports car and wearing expensive clothes). Since Officer Willig did not identify the source of the information, there is no way for this Court to determine if the information was credible, assuming as we must, that a tip was, in fact, received. Since the officer could not demonstrate the reliability of the alleged tip, he failed to articulate a reasonable suspicion that J.E. had engaged in criminal activity or violated his probation.
¶ 13 The juvenile court also relied on the fact that J.E. signed a consent form allowing probation officers to conduct warrantless searches as a term of his probation. T.C.O., 8/29/05, at 7. However, this consent does not allow a probation officer to conduct an unreasonable search. See 42 Pa.C.S. § 6304(a.1)(4)(i)(A) ("A personal search of a child may be conducted by any probation officer if there is a reasonable suspicion to believe that the child possesses contraband or other evidence of violations of the conditions of supervision.") (emphasis added). Accordingly, the fact that J.E. had signed a consent form as a term of his probation was not enough to allow the officers to search J.E.'s person without a reasonable suspicion of wrongdoing.
¶ 14 The dissent cites to Samson v. California, ___ U.S. ___, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) for the proposition "that parolees and probationers are simply not protected by the Fourth Amendment against unreasonable searches and seizures." Dissenting Op. at 1122. Samson deals with the constitutionality of a California law which provides that every parolee upon release from prison "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." 126 S.Ct. at 2196 (quoting Cal.Penal Code Ann. § 3607(a)). The Supreme Court of the United States found that a "suspicion less search" conducted under the authority of that statute did not violate the United States Constitution as the petitioner was unambiguously aware of *1121 the condition and accepted it. See id. at 2199. The Supreme Court never concludes that all parolees and probationers have no protection under the Fourth Amendment and in fact recognizes that "some States and the Federal Government require a level of individualized suspicion" in their supervisory system. See id. at 2201.
¶ 15 Unlike the legislature in California, our legislature has crafted a statute which allows a juvenile probationer the right to be free from unreasonable searches even after signing a consent form. See 42 Pa. C.S. § 6304; see also Williams, 692 A.2d at 1035 (recognizing that even though a probationer's privacy interest is limited, the probationer is still "protected by the Fourth Amendment's requirement that searches be reasonable.") (citation omitted). The purpose of the statute, section 6304, is to indicate that a probation officer must have a reasonable suspicion that a child has violated the conditions of supervision before conducting a personal search. See 42 Pa.C.S. § 6304(a.1)(4)(i)(A). Here, Officer Willig could not articulate any reasonable suspicion that J.E. had engaged in criminal activity. Therefore, a personal search could not be conducted under the confines of section 6304.
¶ 16 However, a violation of section 6304 does not "constitute an independent ground for suppression of evidence in any proceeding." 42 Pa.C.S. § 6304(a.1)(3). Nevertheless, section 6304 affirmatively recognizes that the authority given to probation officers to search juveniles on probation under this section does not permit searches and seizures in violation of the Constitutions of the United States and Pennsylvania. See 42 Pa.C.S. § 6304(a.1)(2). In effect, section 6304(a.1)(2) acknowledges that protections afforded probationers under the Constitutions of the United States and Pennsylvania against unreasonable searches and seizures trumps this statute.
¶ 17 In the case at bar, the information known prior to the search does not provide constitutionally adequate grounds for a search. Even though a probationer's privacy interest is limited, the probationer does not relinquish "his Fourth Amendment right to be free from unreasonable searches." Williams, 692 A.2d at 1036. Rather, the probationer is still "protected by the Fourth Amendment's requirement that searches be `reasonable.'" Id. at 1035 (quoting Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). Here, Officer Willig cited to the tip providing that J.E. may have been involved in a recent shooting. N.T., 4/14/05, at 30-31. However, as stated above, this tip was not demonstrably reliable. See Gates, 462 U.S. at 230, 103 S.Ct. 2317. Officer Willig also testified that the officers in the home knew J.E. was on probation and that they "were going to search him . . . [to] make sure he is following the rules of supervision and conditions of probation and for our safety[.]" N.T., 4/14/05, at 7.
¶ 18 Probation is "aimed at rehabilitating and reintegrating a law breaker into society as a law-abiding citizen . . . [and] is deemed a constructive alternative to imprisonment." Commonwealth v. Colon, 708 A.2d 1279, 1282 (Pa.Super.1998). Our Supreme Court has ruled that a probationer will have limited privacy rights but must still be afforded the protections of the Constitutions of the United States and Pennsylvania. See Williams, 692 A.2d at 1035. Allowing a probation officer to conduct a search of a probationer for no reason other than the person is on probation would take away the right of a probationer to be free from unreasonable searches. Therefore, an officer cannot search a child on probation just because he is on probation *1122 without articulating a reasonable suspicion that the child violated his probation or was involved in further wrongdoing. Here, the Commonwealth provided no evidence which would demonstrate J.E. had engaged in criminal activity or had violated his probation. Hence, we conclude that the pat-down search and the search of the immediate surrounding area was illegal and not in conformance with the Constitutions of the United States and Pennsylvania.
¶ 19 In conclusion, the juvenile court should have suppressed the gun found under the mattress on which J.E. had been sitting. As the gun should have been suppressed, we also conclude that J.E. should not have been found delinquent on the related charge of possession of a firearm without a license.
¶ 20 Based on the foregoing reasons, we reverse the commitment order and remand the case back to the juvenile court for further proceedings.
¶ 21 Order REVERSED. Case REMANDED for further proceedings in accordance with this Opinion.
¶ 22 McCAFFERY, J., files a Dissenting Opinion.
DISSENTING OPINION BY McCAFFERY, J.:
¶ 1 I must respectfully dissent. First, I disagree with the majority's conclusions that Appellant, J.E., was (1) as a probationer afforded the protections of the Fourth Amendment, in light of the United States Supreme Court's recent decision in Samson v. California, ___ U.S. ___, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006); (2) subject to an unreasonable search; (3) not lawfully searched pursuant to a legitimate protective sweep of the premises; and (4) searched "for no reason other than [the fact that he was] on probation." (Majority Opinion at 1121). I also strongly disagree with the majority's conclusion that the General Assembly's directive that "[n]o violation of [Section 6304 of the Juvenile Act] shall constitute an independent ground for suppression of evidence in any proceeding"[1] can simply be ignored.[2] For these reasons and others, I would affirm the trial court's denial of Appellant's motion to suppress. Because I further believe that Appellant was properly adjudicated delinquent for carrying a firearm without a license, I would affirm the trial court's commitment order.
¶ 2 In Samson, supra, the United States Supreme Court reviewed the constitutionality of a California statute providing that parolees may be subject to suspicionless searches at any time as a condition of their parole. The Court came to the conclusion that the statute does not violate the Fourth Amendment prohibition against unreasonable searches and seizures. Id., 126 S.Ct. at 2196. In so holding, the Court reaffirmed the principles that parolees and probationers do not enjoy the absolute liberty of other citizens, and that states may impose reasonable conditions for parole or probation that intrude upon freedoms enjoyed by law-abiding citizens. Id., 126 S.Ct. at 2197. It has long been understood that parolees and probationers may be subject to warrantless searches based not upon probable cause but upon a reasonable suspicion that they have engaged in criminal activity.[3]See United States v. *1123 Knights, 534 U.S. 112, 120, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); Commonwealth v. Moore, 805 A.2d 616, 620 (Pa.Super.2002). Now, it is also clear that state legislation may provide that parolees and probationers are subject to search "at any time ... and with or without cause." Samson, supra, 126 S.Ct. at 2196.
¶ 3 The consequence of the holding in Samson is that parolees and probationers are simply not protected by the Fourth Amendment against unreasonable searches and seizures.[4] By extension, juvenile probationers also do not enjoy Fourth Amendment protections against unreasonable searches and seizures. See, e.g., In Interest of Davis, 377 Pa.Super. 46, 546 A.2d 1149, 1153 (1988) (stating that "society's interests in a juvenile probationer are no different than its interests in an adult probationer or parolee"). The only proper inquiry, therefore, is what protections, if any, are afforded parolees and probationers by statute. In the instant case, we are concerned only with what protections are afforded juvenile probationers under Pennsylvania statutory law as, per Samson, Fourth Amendment protections are not available to Appellant.
¶ 4 As the majority noted, Section 6304 of the Juvenile Act provides that probation officers may search the person of a juvenile probationer when "there is a reasonable suspicion to believe that the child possesses contraband or other evidence of violations of the conditions of supervision." 42 Pa.C.S.A. § 6304(a.1)(4)(i)(A). The property of a juvenile may be searched upon the same grounds. 42 Pa.C.S.A. § 6304(a.1)(4)(ii).
¶ 5 However, Section 6304 also explicitly provides that "[n]o violation of this section shall constitute an independent ground for suppression of evidence in any proceeding." 42 Pa.C.S.A. § 6304(a.1)(3). The majority here ignores this provision by ordering a suppression of the evidence based upon its perception that Appellant's constitutional rights had been violated, citing Section 6304(a.1)(2) of the Juvenile Act. Section 6304(a.1)(2) provides that "[n]othing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania." 42 Pa. C.S.A. § 6304(a.1)(2). For unexplained reasons, the majority appears to conclude that if a perceived unconstitutional search occurs, then Section 6304(a.1)(3) simply is inapplicable, although there is no basis in the Juvenile Act to form this conclusion.
¶ 6 As we have noted, however, there are no Fourth Amendment protections afforded to juvenile probationers as a consequence of the holding in Samson, and thus the majority is incorrect in its critical determination that the search of Appellant violated the United States Constitution and section 8 of Article I of the Constitution of Pennsylvania. The only protections afforded Appellant are those provided by statute, here, Section 6304 of the Juvenile Act. However, our General Assembly has specifically provided that any violation of Section 6304 "shall [not] constitute an independent ground for suppression of evidence in any proceeding." 42 Pa.C.S.A. § 6304(a.1)(3); (emphasis added). Thus, even if Officer Willig's search of Appellant had violated Section 6304(a.1)(4)(i)(A), the suppression of the incriminating evidence found is not an available remedy.[5]
*1124 ¶ 7 However, in the instant case, there is no reason to invoke the provisions of Section 6304(a.1)(3), because no violation of Section 6304 occurred. In other words, based upon the circumstances present in the case sub judice, Officer Willig did have reasonable grounds to search Appellant. In coming to this conclusion I must, once again with respect, strongly disagree with the majority's analysis of the protective sweep doctrine.
¶ 8 The majority has concluded that law enforcement officers are authorized to make protective sweeps of premises only during the course of physically making an arrest. (Majority Opinion at 5-6). The majority has also concluded that because the probation officers in the instant case were not actually arresting another individual at the time they were frisking Appellant, "the protective sweep doctrine is not applicable to this case." (Id.) I respectfully assert that these conclusions are rooted in mistakes of both law and fact.
¶ 9 A "protective sweep" is generally defined as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Commonwealth v. Taylor, 565 Pa. 140, 149, 771 A.2d 1261, 1267 (2001), cert. denied, 534 U.S. 994, 122 S.Ct. 462, 151 L.Ed.2d 380 (2001) (citation omitted). A protective sweep is not limited to times of arrest, however. This Court has held that "exigent" circumstances, not involving an arrest, also provide sufficient grounds for law enforcement personnel to make warrantless protective sweeps of premises to determine if persons who may threaten the safety of the officers are present. See Commonwealth v. Witman, 750 A.2d 327, 335-36 (Pa.Super.2000) (holding that, when summoned by a resident to an abode where a killing has recently occurred, police officers may make a protective sweep of the premises to determine if the killer is still present). Thus, I believe the majority is incorrect to limit the protective sweep doctrine only to those instances where law enforcement officers are actually engaged in an arrest.
¶ 10 More importantly, however, I believe the majority is factually incorrect in its conclusion that the probation officers in the case sub judice were not patting down Appellant during the course of an arrest, or at least an attempted arrest. The probation officers were at Appellant's house to serve an arrest warrant on Appellant's brother. Further, when they encountered Appellant, they were proceeding through the house in search of the subject of their warrant. The fact that the subject of the warrant was not then on the premises does not in the slightest diminish the fact that the officers were at the scene of an intended arrest, requiring that they take such reasonable precautions as they would at any arrest scene.
¶ 11 A protective sweep comprises two levels:
[A]s [] incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing *1125 that the area to be swept harbors an individual posing a danger to those on the arrest scene.
Taylor, supra at 150, 771 A.2d at 1267 (quotation and citation omitted).
¶ 12 Here, the probation officers were informed by Appellant's step-mother, who had answered the door, that Appellant but not his brother was on the premises. The officers were aware that Appellant was on probation, i.e., he had previously committed a crime or crimes and been declared delinquent. The officers were charged by their duties to search the premises for Appellant's brother in order to effectuate the arrest. An arrest and the search for the subject of an arrest warrant necessarily carry the potential for great risk of physical harm to law enforcement personnel and bystanders. The probation officers did not know whether the subject of the arrest warrant was then on the premises. However, they did know that the subject's brother, himself a probationer, was on the premises. What they could not gauge was what, if any, aid Appellant might attempt to provide his brother to thwart the officers in their lawful duty of effectuating the brother's arrest.
¶ 13 The majority concludes that the search of Appellant was unreasonable. On the contrary, the search of Appellant, under these particular circumstances, was the essence of reason. Here, there were "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. To conclude otherwise, given the circumstances of this case, cheapens the lives and safety of the officers charged with carrying out the issued warrant. Although I state this with great respect, the majority's position cavalierly ignores the potentially catastrophic threat that the probation officers faced from Appellant had they simply ignored his presence and the fact of his criminal past, a potentiality graphically illustrated by the fact that Appellant had within his reach at the time he was searched a fully operable handgun.
¶ 14 Thus, I believe the majority is incorrect when it asserts that Officer Willig searched Appellant "for no reason other than [the fact that he was] on probation." (Majority Opinion at 1121). Officer Willig searched Appellant to insure the safety of Officer Willig and his fellow officers, while they engaged in their lawful duty of attempting to serve an arrest warrant upon Appellant's brother.[6] The majority's position that the protective sweep doctrine did not apply under these crystal-clear circumstances is, with respect, illogical, dismissive of the safety of law enforcement personnel and the public, and wholly unsupported by law. I would therefore conclude that as Appellant was lawfully and reasonably searched under the protective sweep doctrine, no violation of Section 6304 occurred. Of course, this conclusion is somewhat academic because it is irrelevant whether a violation of Section 6304 occurred. Pursuant to Section 6304(a.1)(3), the suppression of the uncovered handgun is simply not a remedy that Appellant could pursue.
¶ 15 Because I believe that the trial court correctly denied Appellant's suppression motion, I am obligated to further explore Appellant's second issue to determine whether the commitment order should be affirmed. Appellant argues that the trial court erred in finding that Appellant was delinquent for violating Section 6106 of the Crimes Code, specifically possession of a firearm without a license. Appellant *1126 presents the narrow argument that as a minor, he was incapable of obtaining a license by virtue of being ineligible for same, and thus his actions, or lack thereof, could not establish the elements of the crime. In conjunction with this argument, Appellant contends that because Section 6110.1 of the Crimes Code specifically prohibits the possession of a firearm by a minor, it was improper to charge him with the separate and additional offense of possessing a firearm without a license. However, a review of the Pennsylvania Uniform Firearms Act of 1995, 18 Pa.C.S.A. §§ 6101-6125, establishes that Appellant's argument is without merit.
¶ 16 Appellant is correct that because he was fifteen years old, he was ineligible to obtain a firearms license, as only those individuals twenty-one years of age or older are eligible to obtain such licenses. 18 Pa.C.S.A. § 6109(b). However, ineligibility to obtain a license does not provide insulation from potential prosecution under Section 6106(a)(1). Commonwealth v. Bavusa, 574 Pa. 620, 643-45, 832 A.2d 1042, 1055-57 (2003). As our Supreme Court observed in construing Section 6106(a): "It is one thing to be unlicensed as a result of negligence, ignorance, or indifference, but it is quite another to be absolutely disqualified from licensure and possessing a firearm." Bavusa, supra at 638, 832 A.2d at 1052-53. A person under the age of twenty-one years is absolutely disqualified from obtaining a license under Section 6109, and is thus not exempt under Section 6106(b) from prosecution under Section 6106(a).[7]
¶ 17 The separate crime of possession of a firearm by a minor, set forth at 18 Pa.C.S.A. § 6110.1, is entirely different from the crime defined by Section 6106. Section 6110.1 provides that, except in certain circumstances not relevant to the case sub judice, a person under the age of eighteen years shall not possess or transport a firearm anywhere in Pennsylvania.
¶ 18 A plain reading of these statutes refutes Appellant's argument that he should not have been charged under Section 6106, either for the reason that he was ineligible to obtain a license under Section 6109 or because he was also in violation of Section 6110.1. The General Assembly has clearly expressed its intent that persons not eligible to obtain a license under Section 6109, but who nevertheless engage in behavior proscribed by Section 6106(a)(1), have engaged in felonious behavior. Had the General Assembly desired to exempt persons under the age of twenty-one, or some other age, it could have merely added a thirteenth exemption to Section 6106(b). Clearly, however, the intent of the General Assembly was to prohibit those individuals under the age of twenty-one from the behavior proscribed by Section 6106(a). Therefore, I would conclude that the trial court did not err by determining that Appellant was delinquent as a result of his violations of both Section 6106 and Section 6110.1.
¶ 19 For all of the reasons set forth above, I would hold that the trial court did not err in adjudicating Appellant delinquent and committing him to a placement facility. Accordingly, I would affirm the trial court's order.
NOTES
[1] 42 Pa.C.S.A. § 6304(a.1)(3).
[2] As will be discussed infra, I do not believe, contrary to the majority, that a violation of Section 6304 of the Juvenile Act occurred in this case.
[3] Here, the trial court found that Appellant, as a condition of his probation, had consented to warrantless searches as directed by probation officers. (Trial Court Opinion, dated August 29, 2005, at 6, n. 2; N.T. at 42).
[4] Appellant makes no separate argument that the Pennsylvania Constitution would afford greater protection than does the United States Constitution under the circumstances of the instant case.
[5] Quite troubling to me is how the majority has, by its decision, and without any determination as to the constitutionality of its action, simply written Section 6304(a.1)(3) out of the Juvenile Act. Respectfully, I must strongly dissent from the majority's conclusion that Section 6304(a.1)(3) can simply be ignored, or based upon another provision of the statute, simply eliminated from our codified laws.
[6] Indeed, Officer Willig testified to same. (N.T. at 30).
[7] Section 6106(b) sets forth twelve exceptions to the offense defined at Section 6106(a), which exceptions include law enforcement personnel and other individuals who, under certain circumstances, may carry a firearm in a vehicle or concealed on or about their persons in public without possessing a license issued under Section 6109. None of the exceptions list individuals under the age of twenty-one years.