J-A24034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
SAIFUDEEN BOYCE :
:
Appellant : No. 199 EDA 2022

Appeal from the Judgment of Sentence Entered December 16, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001454-2020

BEFORE: PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MAY 23, 2023**

Saifudeen Boyce ("Boyce") appeals from the judgment of sentence of three years of probation following his convictions for carrying a firearm without a license and carrying a firearm in public in Philadelphia.[1] After careful review, we affirm.

The record establishes the following: On January 10, 2020, at approximately 1:26 p.m., Philadelphia Police Officer Timothy Sedler was on duty in Philadelphia. *See* N.T., 12/16/21, at 7. Officer Sedler received "flash information" over the police radio that someone had fired a gun at a vehicle at the 5800 block of Alter Street. *See id*. at 7-8. Police investigated the report, discovered casings on the ground at the site of the shooting, and included this fact in the flash information. *See id*. at 8; *see also id*. at D-1,

---

[1] *See* 18 Pa.C.S.A. §§ 6106(a)(1), 6108.

p.2 (Philadelphia Police Department incident history indicating, *inter alia*, that at 1:31 p.m., officers were at the scene, "checking [the] alley"; confirming that, at 1:39 p.m., a vehicle was hit; and specifying the location and license plate number of the damaged vehicle). Officer Sedler received several flashes, which he described as follows:

> It came out . . . for a person with a gun radio assignment at 5800 Alter Street, that was at approximately 1:25 p.m. it came out. The remarks are description – black male, black jacket with fur around the hood, through the alley towards Ellsworth, three shots heard. It later came out . . . four to five shots heard, no flash, ten shots heard, no flash, and then, lastly . . . it came out, armed with a gun, black male, blue/black jacket with fur on hood[,] shooting at house on corner, last seen on foot through alley towards 5800 Baltimore . . ..

*Id*. at 12; *see also id*. at 10 (Officer Sedler testifying there were a "few" flash information reports following the shooting). In another flash that occurred at approximately 2 p.m., another officer, Sergeant Smith,[2] stated over the radio that he had observed a male matching the flash description on 5700 Christian Street, which is about four blocks away from the site of the shooting. *See id*. at 8, 10. Officer Sedler, and his partner, Officer Finkbohner,[3] were traveling eastbound on that street in a marked vehicle, when Officer Sedler spotted the suspect. *See id*. at 8-9, 23. Officer Sedler observed Boyce using his cell phone and walking westbound on Christian

---

[2] The certified record does not reveal Sergeant Smith's first name.

[3] The certified record does not reveal Officer Finkbohner's first name.

Street.  *See id*. at 22.  Officer Finkbohner performed a "u-turn" and pulled the marked police vehicle up next to Boyce.  *See id*. at 9.  Officer Sedler, who was in full uniform and had his body camera activated, exited the car, announced himself as police, and told Boyce to stop.  *See id*. at 12, 23-24.  He grabbed Boyce and asked him about the firearm; Boyce responded that he had a gun in his front waistband.  *See id*. at 9, 24-25.[4]  Officer Finkbohner lifted up Boyce's shirt and Officer Sedler recovered a 40-caliber black and silver Smith & Wesson handgun, model SD40VE, serial number FZP6953, with twelve rounds in the magazine and one round in the chamber.  *See id*. at 9.  Officer Sedler checked to see if Boyce had a permit to carry, and when he discovered Boyce did not, he placed Boyce under arrest and transported him to the police station.  *See id*.[5]  The Commonwealth charged Boyce with the *supra* firearms offenses.  *See* Information, 2/21/20.  Boyce moved for

_____

[4] We note that Officer Sedler's testimony about when he learned that Boyce had a firearm is ambiguous.  Officer Sedler testified that "at some point I asked him if he had a firearm, **that might have been as we were pulling up with my window down, and he said he did** . . .."  N.T., 12/16/21, at 24 (emphasis added).  However, he also agreed on cross-examination that he only asked Boyce about the gun after he exited the vehicle, told Boyce to stop, and announced himself as a police officer.  *See id*. at 24-25.  The footage from Officer Sedler's bodycam is likewise ambiguous due to the lack of sound at the critical first moments of the interaction.  *See id*., Ex. C-2.  As discussed further below, the judge presiding over the suppression hearing ("the presiding judge") concluded that a stop occurred before Boyce admitted to the officers that he had a firearm.

[5] Police also stopped another individual in the area around the same time who fit the description in the flash report.  *See* N.T., 12/16/21, at 20-22.  The record contains no further information about that stop.

suppression, arguing, among other things, that he was subjected to a stop without the requisite reasonable suspicion, and he was arrested without probable cause. *See* Omnibus Motion, 7/30/20, at 1.

The trial court held a suppression hearing on December 16, 2021, at which the Commonwealth offered testimony by Officer Sedler along with several exhibits, including, *inter alia*, footage from Officer Sedler's body camera. The Commonwealth called no other witnesses, and Boyce presented no evidence. At the conclusion of the hearing, the trial court denied suppression and issued its findings of fact and conclusions of law:

> In . . . our case there was more than one flash call regarding the gunfire. A flash call described a black male with a black or blue jacket with fur around the hood, and [Boyce] was stopped around four blocks of the shooting.
>
> * * * *
>
> [T]he video of [Boyce] corroborates this description of a dark black or blue jacket with fur around the hood. . . . . ***In our case the police officers get out of their car in full uniform***, the police officers did not have their firearms drawn, and did not tell the defendant that he was under arrest. ***This was a non-custodial investigatory stop***. The police officer asked [Boyce] did he have any weapons[,] and [Boyce] volunteered and said yes and said it was in his waistband. After this, the police seize the gun from the waistband of [Boyce] and placed [him] under arrest.

N.T., 12/16/21, at 34-36 (emphases added).

Following the trial court's denial of his suppression motion, Boyce opted for a stipulated non-jury trial. *See id*. at 41-44. The trial court convicted Boyce of firearms not to be carried without a license and carrying firearms in public in Philadelphia. *See id*. at 44. The parties proceeded immediately to

- 4 -

sentencing, and both the Commonwealth and Boyce recommended three years of reporting probation. *See id*. at 45-46. The trial court sentenced Boyce to three years of reporting probation in accordance with the parties' recommendation. *See id*. at 47-48.[6] Boyce timely appealed and both Boyce and the trial court complied with Pa.R.A.P. 1925.[7]

Boyce raises the following issue for our review:

> Did not the trial court err in denying [Boyce's] motion to suppress, violating his rights under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, where police lacked reasonable suspicion to stop [Boyce] on the basis of generalized anonymous flash information, and where [Boyce] was clearly detained prior to being asked whether he possessed a firearm?

Boyce's Brief at 3.

This Court's standard of review for an order denying a suppression motion is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether

---

[6] The trial court observed at sentencing that "there was no evidence that [Boyce] was in any way connected to the shooting with regard to the flash call." N.T., 12/16/21, at 48.

[7] While both Boyce and the trial court indicate that the trial court issued an order directing Boyce to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), the order does not appear to be included in the certified record. *See* Trial Court Opinion, 3/25/22, at 4; *see also* Boyce's Rule 1925(b) Statement, 2/18/22, at ¶ 3. However, Boyce filed a statement of matters complained of on appeal, and the trial court filed a responsive Rule 1925(a) opinion. The term ended on December 31, 2021 for the presiding judge; accordingly, this case was transferred to another judge who authored the Rule 1925(a) opinion ("the successor judge"). *See* Trial Court Opinion, 3/25/22, at 3 n.2.

- 5 -

the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (internal citations, quotations, and indentation omitted).

Boyce argues that Officer Sedler subjected him to an investigatory detention without reasonable suspicion. This Court has previously explained:

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures, including those entailing only a brief detention. Specifically, police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. If a defendant's detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention.

*Commonwealth v. Cunningham*, 287 A.3d 1, 7 (Pa. Super. 2022) (internal citation and quotations omitted). Further, there are three types of interactions between police and citizens:

The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a

- 6 -

seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid[,] police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

*Id*. (internal citation omitted).[8] Under both the Fourth Amendment and Article I, § 8, police may conduct an investigative detention pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *See Commonwealth v. Brame*, 239 A.3d 1119, 1127 (Pa. Super. 2020) (noting that the *Terry* doctrine applies to both constitutions). As stated above, an investigative detention requires reasonable suspicion. This is an objective standard which requires courts to determine

whether the facts available to police at the moment of the intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

This Court has recognized [that] reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his

---

[8] In determining the type of seizure, courts employ the "free to leave test," which is an objective test requiring that courts determine whether, "taking into account all of the circumstances surrounding the encounter, the police would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person." *Cunningham*, 287 A.3d at 7–8 (internal citation omitted).

experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

To demonstrate reasonable suspicion, the detaining officer must articulate something more than an inchoate and unparticularized suspicion or hunch. To determine whether reasonable suspicion exists, we examine the totality of the circumstances through the eyes of a trained officer and not an ordinary citizen.

*Cunningham*, 287 A.3d at 8–9 (internal citations, quotations, indentation, and brackets omitted). Among the factors "to be considered in forming a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight." *Commonwealth v. Leonard*, 951 A.2d 393, 396 (Pa. Super. 2008). "While a tip can be a factor, an anonymous tip alone is insufficient as a basis for reasonable suspicion. Such anonymous tips must be treated with particular suspicion." *Id*. at 397 (internal citations omitted). Nevertheless, the "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id*. (internal citations and quotations omitted). Further, "[w]here . . . the source of the information given to the officers is unknown, the range of details provided and the prediction of future behavior are particularly significant, as is corroboration by independent police work." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1157 (Pa. 2000). The corroboration requirement "is based on the principle that *because an informant is right about some things, he or she is probably right about other facts also*, including the allegation that the object of the tip is engaged

in criminal activity." ***Commonwealth v. Jackson***, 698 A.2d 571, 574 (Pa. 1997) (emphasis added; internal citation omitted).

Boyce argues the trial court erred in denying his suppression motion because police subjected him to an investigatory detention without the requisite reasonable suspicion. ***See*** Boyce's Brief at 17. Boyce asserts that police detained him based on "generalized flash information" alone, and without any evidence that this information was linked to a "credible source." ***Id***. According to Boyce, the information police had at the time was an "uncorroborated flash information which gave a highly generalized description and no specific location," namely, that there was a "black male wearing a blue or black jacket with fur around the hood." ***Id***. at 23. Boyce maintains that, because it was only after police detained him that they learned he had a gun, police lacked reasonable suspicion to detain him. Boyce relies on cases including ***Commonwealth v. Hayward***, 756 A.2d 23, 28 (Pa. Super. 2000) and ***Commonwealth v. Jackson***, 698 A.2d 571, 572 (Pa. 1997) in support of his argument that a generalized description from an anonymous source is insufficient to establish reasonable suspicion. ***See*** Boyce's Brief at 16-17, 22-23.

At the conclusion of the suppression hearing, the presiding judge explained his ruling as follows:

> In Commonwealth versus Boyce, in our case there was more than one flash call regarding the gunfire. A flash call described a black male with a black or blue jacket with fur around the hood,

and the defendant was stopped around four blocks of the shooting.

* * * *

In our case you have a description of gender, male; race, a black male; and clothing, a black or blue jacket with fur around the hood; and the video of [Boyce] corroborates this description . . .. . . . In our case the police officers get out of their car in full uniform, the police officers did not have their firearms drawn, and did not tell the defendant that he was under arrest. This was a non-custodial investigatory stop. The police officer asked [Boyce] did he have any weapons and [Boyce] volunteered and said yes and said it was in his waistband. After this, the police seize the gun from the waistband of [Boyce] and placed [him] under arrest.

For those reasons, the motion is denied.

N.T., 12/16/21, at 34-36.[9]

_____

[9] As noted above, the presiding judge placed his findings of fact and conclusions of law on the record at the conclusion of the hearing. However, following the expiration of that judge's term, this case was assigned to the successor judge, who did not preside over the suppression hearing, but who authored the Rule 1925(a) opinion. A successor judge, who did not preside over the proceedings at issue, stands "in the same position [as an appellate court] . . . in ruling on [a] claim; both would be confined to the 'cold record' of the trial proceedings in conducting their review." *Commonwealth v. Izurieta*, 171 A.3d 803, 808-09 (Pa. Super. 2017) (internal citation and some quotations omitted). That is, "the successor judge's opinion should not be afforded the level of discretion given to a judge who presided at the trial in question." *Id*. at 809. Accordingly, our discretionary standard of review does not apply to the successor judge's Rule 1925(a) opinion.

We note, however, that the successor judge concluded that "[t]he record shows the police drove up to Boyce and asked him – while sitting in their police cruiser with their windows down – whether he had a firearm. This initial interaction was a mere encounter. Boyce was not at that point detained." Trial Court Opinion, 3/25/22, at 4. The presiding judge, though, concluded, to the contrary, that there was an investigatory detention before the police learned that Boyce had a firearm. Further, the presiding judge did not

*(Footnote Continued Next Page)*

- 10 -

Following our review, we decline to disturb the trial court's ruling. We reiterate that an anonymous tip may contain information contributing to the formation of reasonable suspicion *if* the tip is "sufficiently corroborated by independent police work to demonstrate that the tip was correct." *In re J.E.*, 907 A.2d 1114, 1120 (Pa. Super. 2006) (internal citation and quotations omitted). The rationale is that if an anonymous "informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Alabama v. White*, 496 U.S. 325, 331 (1990) (citation omitted). "Reasonable suspicion . . . is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the totality of the circumstances[,] the whole picture that must be taken into account when evaluating whether there is reasonable suspicion." *Id*. at 330 (internal citation omitted). Thus, "if a tip

---

determine that a mere encounter occurred at all. Following our review of the testimonial and video evidence, we conclude the record is ambiguous on this point, and so we defer to the fact-finding of the presiding judge, who was best situated to make credibility determinations and findings of fact. *See Commonwealth v. Carmenates*, 266 A.3d 1117, 1127 (Pa. Super. 2021) (stating that "[w]e defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony"); *see also Commonwealth v. Dean*, 940 A.2d 514, 518 n.2 (noting that "[w]hen faced with a conflict of testimony, we defer to the suppression court, which, as fact-finder, passes upon credibility of witnesses, and its findings are not disturbed when supported by the record") (internal citation, quotations, and brackets omitted).

has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id*. We note that, in this case, Officer Sedler received information about a shooting at the 5800 block of Alter Street. *See*, *e.g.*, N.T., 12/16/21, at 8. The flash information also included a description of the alleged shooter, namely, that it was a black male wearing a dark coat with a fur hood. *See id*. Further, and crucially, police independently corroborated the criminal activity described in the anonymous tip: police responded to the area of the shooting and observed that a vehicle had been shot and that there were casings on the ground. *See id*. (Officer Sedler testifying, "I believe it was a vehicle that was struck as well as multiple casings on the ground"); *id*. at D-1, p.2 (indicating police had checked the alley at the scene following the tip and found that a grey Ford vehicle was "hit"). Following corroboration of the criminal activity, police continued their investigation, and observed Boyce, who fit the description in the flash, around four blocks from the shooting, within about thirty-five minutes of the incident. *See id*. at 10. Here, because there was corroboration, by independent police investigation, of the criminal activity in the tip, Officer Sedler was permitted to infer that, "because an informant is right about some things, he or she is probably right about other

facts also, including the allegation that the object of the tip is engaged in criminal activity." **Jackson**, 698 A.2d at 574.[10]

It is the independent corroboration here that distinguishes this case from the "'man with a gun' anonymous tip" cases Boyce cites,[11] including **Commonwealth v. Anderson**, 392 A.2d 1298 (Pa. 1978) (holding police lacked reasonable suspicion based on an anonymous tip, with "only a general description was given, one which would fit any number of individuals," and no corroboration of the tip); **Jackson**, 698 A.2d 571 (Pa. Super. 1997) (holding that an anonymous tip that a person, described as wearing a "green jacket," was carrying a gun was insufficient to give rise to reasonable suspicion); **Hayward**, 756 A.2d at 25, 29-30 (holding that "[m]ere **presence alone** of an individual at a particular place, as described by [an] anonymous informant, does not establish that the individual is engaged in criminal activity," and concluding that police lacked reasonable suspicion following a report by an unidentified individual that one male in a group of males in a park was "brandishing a weapon," without any description of the suspect's race,

---

[10] There is no dispute here that "[a] police officer need not personally observe the suspicious conduct leading to the reasonable belief needed for a **Terry** stop and may rely upon information received over the police radio to justify the initial stop." **Commonwealth v. Arch**, 654 A.2d 1141, 1144 (Pa. Super. 1995).

[11] **See Commonwealth v. McDonald**, 740 A.2d 267, 270, 270 n.4 (Pa. Super. 1999) (recognizing that Pennsylvania requires independent corroboration in cases where there is a "'man with a gun' anonymous tip").

clothing, or height, and no other "independent corroboration of the individual's involvement in criminal activity") (emphasis in original). In sum, police independently corroborated the anonymous tip that a crime had occurred, *i.e.*, the shooting in the area of 5800 Alter street, by investigating and discovering shell casings and a struck vehicle, consistent with the tip, their investigation established the reliability of the tip; and, given that Boyce fit the description of the shooter, and police observed him blocks away within approximately thirty-five minutes, we decline to disturb the trial court's determination that the totality of the circumstances established reasonable suspicion for officers to perform an investigative detention.[12]

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023

---

[12] Boyce does not argue on appeal that the **Terry** frisk or subsequent arrest were improper. Boyce focuses exclusively on the alleged illegality of the stop, so we will not address the **Terry** frisk or subsequent arrest.