J-S53024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DESHUNA CROSBY, | |
| Appellant | No. 231 WDA 2014 |

Appeal from the Judgment of Sentence of January 10, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000941-2013

BEFORE:  DONOHUE, OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 30, 2014**

Appellant, Deshuna Crosby,[1] appeals from the judgment of sentence entered on January 10, 2014, following her jury trial convictions for two counts each of possession with intent to deliver a controlled substance (PWID) and possession of a controlled substance, and one count each of endangering the welfare of a child, possession of drug paraphernalia, and conspiracy.[2]  We affirm.

The trial court set forth the facts and procedural history of this case as follows:

---

[1] Appellant was tried jointly with her co-defendant, Michael Ray James. James is currently appealing his judgment of sentence in a companion case, 318 WDA 2014.

[2]   35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), 18 Pa.C.S.A. § 4304, 35 P.S. § 780-113(a)(32), and 18 Pa.C.S.A. § 903, respectively.

*Retired Senior Judge assigned to the Superior Court.

On February 12, 2013, Appellant and a co-conspirator, Michael Ray James, were found by the U.S. Marshall's Fugitive Task Force in Room 327 of the Wyngate Hotel in Summit Township[, Pennsylvania]. The Task Force was serving an arrest warrant on James after receiving a tip that James was at the hotel.

When the Task Force arrived to serve the arrest warrant, the officers knocked and announced their presence. After a short delay, James answered the door, stepped into the corridor and was placed in handcuffs.

Still inside the hotel room was Appellant and her four-month old infant. James claims to be the father of the child. The officers directed Appellant to step into the hallway. Appellant initially ignored the request, walked back into the room, picked up [a] car seat with the infant [in it], a baby bag and a coat. Appellant then exited the room with the baby and other items.

Appellant was asked whether she had anything illegal or any weapons. Appellant denied possession of anything illegal and denied having weapons. Appellant began voluntarily emptying her pockets. The officers asked her if they could search the car seat. Appellant [] lifted the baby from the car seat. In the car seat, the officers found three baggies of white and/or tan substances later identified as 53.6 grams of heroin and 128.9 grams of cocaine. There were two bags of cocaine and one bag of heroin.

When James realized the drugs were discovered, he exclaimed, "-- those aren't hers. They're mine. That's not hers. It's mine." At trial, James testified that he knew the drugs were in the room and admitted that he was in possession of the drugs. James admitted to being a drug dealer of marijuana.

Upon a search of her person, the police found almost $2[,]600.00 hidden inside Appellant's bra. Appellant was unemployed. Appellant was in the Erie County Prison Work Release Program and only had permission to leave the prison to apply for jobs on that day.

A digital scale used for weighing drugs and plastic baggies used for packaging drugs were found in plain view in the hotel room on top of the microwave. No drug paraphernalia for immediate use of the drugs was found in the hotel room or on the person of Appellant or James. Appellant denied using the drugs which were found or possessing any paraphernalia for drug usage. There was no evidence found to suggest that any other persons had been in the room using the drugs as opposed to selling them.

After a [joint] jury trial [with co-conspirator James] on November 12th and 13th, 2013, Appellant was found guilty [of the aforementioned charges].

\* \* \*

Appellant was sentenced on January 10, 2014 [to an aggregate sentence of 7½ - 16 years of imprisonment]. Appellant filed a [m]otion to [r]econsider [s]entence which was denied by [o]rder on January 13, 2014. A [n]otice of [a]ppeal was filed [on] February 6, 2014. Appellant filed a [Pa.R.A.P.] 1925(b) [c]oncise [s]tatement of [errors] on [a]ppeal on February 25, 2014.

Trial Court Opinion, 3/25/2014, at 1-3 (record citations omitted).[3]

On appeal, Appellant presents the following issues for our review:

1. The [trial] court erred in denying [Appellant's] pretrial motions when it ruled that the police did not violate [Appellant's] constitutional rights when the search was not based on reasonable suspicion and/or probable cause.

2. The verdict in this case goes again[s]t the sufficiency of the evidence when the evidence failed to establish that

_____

[3] Judge William R. Cunningham authored the March 25, 2014 opinion. On March 27, 2014, Judge Ernest J. DiSantis, Jr. authored a supplemental opinion pursuant to Pa.R.A.P. 1925(a) addressing Appellant's suppression issue, because Judge DiSantis presided over Appellant's omnibus pretrial motions.

[Appellant] acted knowingly and/or intentionally for each of the criminal charges.

3. The sentence in this case was manifestly excessive and clearly unreasonable, especially in its consecutiveness.

Appellant's Brief at 2 (numbers added and superfluous capitalization omitted).

In her first issue presented, Appellant argues that the suppression court erred by failing to suppress the physical evidence obtained by police, because "[t]he [o]fficers did not have a legal basis to search [Appellant], her car seat or the hotel room." *Id.* at 7. She argues that she had an expectation of privacy in the baby car seat. *Id.* at 8. She claims that "officers went to the hotel room to execute an arrest warrant of another person without reasonable suspicion or probable cause that criminal activity was afoot" and "had no reason to believe that [Appellant] was armed at the time of the search[.]" *Id.* at 7. Appellant avers, "[b]oth individuals were in custody at the time of the search and neither presented a danger to the officers or a flight risk." *Id.* at 8. In the alternative, Appellant maintains that she "was not under arrest [at the time of the search] and it was not until later that the officers were instructed to take [Appellant] to the Erie County Prison" for violating the terms of her work release. *Id.* at 8-9.

Our standard of review of an order denying suppression motion is well-settled:

> We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may

consider the evidence of the witnesses offered by the Commonwealth, as [the prevailing party], and only so much of the evidence presented by [the] defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Commonwealth v. Landis*, 89 A.3d 694, 702 (Pa. Super. 2014) (citation omitted).

Here, the suppression court determined the search was constitutionally permissible and, thus, suppression was unwarranted. Trial Court Opinion, 3/27/2014, at 3-7. More specifically, the suppression court concluded that prior to executing the arrest warrant for co-defendant James, police had information that Appellant was in the hotel room with him and that she was in violation of the terms of her work release. *Id.* at 6-7. Thus, "her violation of the work release pass justified the Task Force members to take her into custody" and because the officers lawfully arrested her, the search was permissible and conducted incident to the arrest. *Id.* at 7. Moreover, the suppression court determined that Appellant voluntarily consented to the search. *Id.* at 6. The suppression court further concluded the narcotics would have been admissible under the inevitable discovery doctrine. *Id.* at 7.

We agree, albeit on slightly different grounds.[4]  The police knew that Appellant was in an unauthorized location in violation of the terms of her work release when they executed the arrest warrant for James.   N.T., 9/30/2013, at 4-6, 8-9, 14-15, 17-22.   "[A] participant in [a] work release program, [] remain[s] in the official detention of the Commonwealth." **Commonwealth v. Brown**, 396 A.2d 377, 379 (Pa. Super. 1978).   "The county jail officials may detain and recommit [a work-release] offender or preclude the offender from leaving the county jail if the offender violates the conditions set by the jail officials or the court[.]"   42 Pa.C.S.A. § 9813(c). Our Supreme Court has ruled that a person under Commonwealth supervision, such as a probationer or parolee (or, in this case, a person supervised on work release), enjoys a reduced scope of privacy rights, but must still be afforded the protections of the Constitutions of the United States and Pennsylvania.   **See Commonwealth v. Williams**, 692 A.2d 1031, 1035 (Pa. 1997).   We have previously determined that before law enforcement may search a supervisee's person, the officer must articulate a reasonable suspicion that the person violated the terms of her supervision or was involved in further wrongdoing.   **Id.** ("A search will be deemed reasonable if the totality of the evidence demonstrates: (1) that the parole

---

[4] We can affirm the trial court on any valid basis.   **Commonwealth v. Kemp**, 961 A.2d 1247, 1254 n.3 (Pa. Super. 2008).

officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty."); *see also In re J.E.*, 907 A.2d 1114, 1121-1122 (Pa. Super. 2006).

Here, prior to the search, the director of the work release program advised police officers that Appellant was only authorized to submit job applications and that she was not permitted to go to James' hotel. N.T., 9/30/2013, at 8, 14- 16. Because "her whereabouts were not known to the Erie County Jail[,]" Appellant was in "violation of her work release and not abiding by the rules that were set for her when she was released to go and apply for positions." *Id.* at 14-16. Accordingly, because police articulated a reasonable suspicion that Appellant had violated the terms of her supervision, the search and her arrest were constitutionally permissible.

We also conclude that the search of the infant's car seat passes constitutional muster. We point out initially that Appellant does not challenge the trial court's determination that she impliedly, voluntarily consented to the search. "[A]ctual consent, implied consent, search incident to lawful arrest, and exigent circumstances may negate the necessity of obtaining a warrant before conducting a search." *Commonwealth v. Riedel*, 651 A.2d 135, 139 (Pa. 1994). "[T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances."

***Commonwealth v. Caban***, 60 A.3d 120, 130 (Pa. Super. 2012). Here, there was evidence that when asked if police could search her, Appellant "voluntarily began to empty her pockets" and she "voluntarily bent over, pulled the baby out and let [the officer] look at the car seat." N.T., 9/30/2013, at 9. While she did not verbally reply, Appellant's actions show implied consent. Upon review of the certified record, there is no additional evidence that Appellant was under undue police coercion or duress at the time of the search. For all of the foregoing reasons, Appellant's first issue lacks merit.

In her second issue presented, Appellant claims the Commonwealth did not prove her convictions with sufficient evidence, because the Commonwealth did not establish that Appellant acted knowingly or intentionally. Appellant's Brief at 9. The entire sum of Appellant's argument in this regard, is as follows:

> In this case, the trial court maintains that while a digital scale used for weighing drugs and baggies used for packaging drugs was found in the hotel room, no paraphernalia for ingesting the drugs was located. Further, [Appellant] denied using the drugs. However, since another person was present in the hotel room, the evidence in this case does not prove that [Appellant] possessed illegal substances with the intent to deliver them to anyone else.

***Id.*** at 9.

Our standard of review for a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014) (citation omitted).

Primarily, we note that Appellant sets forth a blanket sufficiency challenge to all of her convictions. In *Commonwealth v. Williams*, 959 A.2d 1252 (Pa. Super. 2008), this Court reiterated that when challenging the sufficiency of the evidence on appeal, Appellant's Pa.R.A.P. 1925(b) statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. *Williams*, 959 A.2d at 1257. "Such specificity is of particular importance in cases where, as here, the Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.

Super. 2009). Here, Appellant only specified that "the evidence presented was insufficient to establish that [Appellant] acted knowingly and/or intentionally for each of the criminal charges that she faced at trial." Rule 1925(b) Statement 2/25/2014, at 3.

Further, on appeal, Appellant's sufficiency of the evidence argument is underdeveloped. Appellant challenges all of her convictions based upon scienter. However, she does not set forth the elements of the crimes she was convicted. While Appellant does set out the standard of review for sufficiency of the evidence claims, her argument is otherwise without citation to any legal authority. For these reasons, we could find the claim waived.

However, the thrust of her argument is clear. Appellant is challenging her two PWID convictions. Pursuant to 35 P.S. § § 780-113, the following acts are prohibited:

> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

"[I]n order to prevail on a charge of possession of a controlled substance with intent to deliver, the Commonwealth must prove, beyond a reasonable doubt, that the accused possessed a controlled substance *and* that the accused had the intent to deliver the controlled substance.

- 10 -

***Commonwealth v. Taylor***, 33 A.3d 1283, 1288 (Pa. Super. 2011) (emphasis in original).

Regarding possession, a person may have actual or constructive possession of contraband. Constructive possession is defined as follows:

> [c]onstructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Muniz***, 5 A.3d 345, 348-349 (Pa. Super. 2010) (citation omitted). "Additionally, it is possible for two people to have joint constructive possession of an item of contraband." ***Commonwealth v. Hopkins***, 67 A.3d 817, 820-821 (Pa. Super. 2013) (citation omitted). Here, the Commonwealth presented evidence that Appellant was holding the infant's car seat from which the narcotics were recovered. Thus, the element of possession is clearly satisfied.

Regarding intent to deliver, our Supreme Court has stated:

> When the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors including the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large[] sums of cash found in possession of the defendant.

***Id.***, *citing* ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237–1238 (Pa. 2007) (brackets and ellipsis omitted).

Here, the trial court noted:

> In this case, the cocaine and heroin were packaged into three different plastic baggies. The large quantities of drugs found were beyond that needed for personal use. A scale for weighing drugs and plastic baggies for packaging drugs were in plain view in the hotel room. The purpose of these items was to weigh and package heroin for retail sales. There was no evidence of any drug paraphernalia used for taking drugs. Both Appellant and James were unemployed, yet Appellant had approximately $2,600.00 in cash hidden on her person.

Trial Court Opinion, 3/25/2014, at 8.

We agree with the trial court that the evidence points unmistakably to PWID. Appellant was carrying a sizeable amount of narcotics in a baby carrier and $2,600.00 in cash inside her bra. Those items were clearly in her possession at the time of the search. Moreover, the narcotics were not packaged for individual use and police did not find paraphernalia commonly used for personal consumption. The scales and packaging material were found inside the hotel room with Appellant and James; thus, Appellant had joint constructive possession of those items. These items are used for packaging controlled substances for delivery. Based upon a totality of the circumstances, we conclude that there was sufficient evidence to support Appellant's convictions for PWID. As such, Appellant's second issue is without merit.

Finally, Appellant contends that her sentence is excessive. Appellant's Brief at 9-11. We find this issue waived, but otherwise not subject to our review. In her Rule 1925(b) statement, Appellant claimed that the trial

court abused its discretion by sentencing her on the endangering the welfare of a child conviction consecutively to her PWID convictions. Rule 1925(b) Statement 2/25/2014, at 3. On appeal, Appellant argues that the trial court failed to individualize her sentence and take her age and the fact that she is a mother into consideration. Appellant's Brief at 10. Appellant did not present that issue in her Rule 1925(b) statement and cannot raise a new theory in support of her sentencing claim on appeal. *See* Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 302(a). Thus, Appellant has not properly presented that issue for our review.

Moreover, Appellant challenges the discretionary aspects of sentencing:

> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.
>
> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265-1266 (Pa. Super. 2014) (internal citations omitted).

Appellant fulfilled the first two elements by filing a timely notice of appeal, and by preserving her claim in a motion for modification of sentence.

- 13 -

Appellant also met the third element because her brief contains the necessary concise statement of the reasons relied upon for appeal. Therefore, we must determine if Appellant's challenge to the discretionary aspect of her sentence raises a substantial question.

"Generally speaking, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." **Commonwealth v. Mastromarino**, 2 A.3d 581, 586 (Pa. Super. 2010) (citation omitted). "[T]he key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." **Id.** at 587. Here, the aggregate sentence of 7½ - 16 years of imprisonment is not facially excessive for the criminal conduct involved which included two PWID convictions, two possession of a controlled substance convictions, and individual convictions for endangering the welfare of a child, possession of drug paraphernalia, and conspiracy.

Appellant's Rule 2119(f) statement alleges that her sentence was contrary to fundamental norms underlying the sentencing process because it was not "individual." She also claims that her sentence violated 42 Pa.C.S.A. § 9781 since it was clearly unreasonable. We are not persuaded that these bald allegations raised a substantial question within the contemplation of our prior cases. "An allegation that the sentencing court

failed to consider certain mitigating factors generally does not necessarily raise a substantial question." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (citations omitted). "When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." ***Id.*** (citation omitted). "In particular, the court should refer to the defendant's prior criminal record, [her] age, personal characteristics and [her] potential for rehabilitation." ***Id.*** "Where the sentencing court had the benefit of a presentence investigation report (PSI), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Id.*** (internal quotations and citation omitted). Here, the sentencing court had the benefit of a PSI report. N.T., 1/10/2014, at 10. Hence, for all of the foregoing reasons, Appellant has waived her sentencing challenge and she has failed to present a substantial issue to invoke our discretionary review of her sentence. Accordingly, Appellant's third claim does not merit review.

Judgment of sentence affirmed.

Judge Donohue joins the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/30/2014