698 A.2d 571

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Carl JACKSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 1996.

Decided July 23, 1997.

John W. Packel, Linda A. Peyton, Jeffrey P. Shender, Philadelphia, for Carl Jackson.

Catherine Marshall, Lawrence J. Goode, Philadelphia, for Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

In this case, we revisit the issue of whether the police have reasonable suspicion to conduct a stop and frisk pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), based solely on an anonymous tip that a person matching the suspect's description is carrying a gun. This case also presents the question of whether an article abandoned by the appellant during the course of the stop and frisk may be admissible into evidence at appellant's trial notwithstanding

the legality of the frisk, on the grounds that appellant lacked any reasonable expectation of privacy in the article. For the reasons that follow, we answer both questions in the negative, thus reversing the decision of the Superior Court.

At approximately 10:23 p.m., a Philadelphia police officer received a police radio report of a man in a green jacket carrying a gun. Other than the location, no additional details were provided.

The officer responded, arriving at the corner of Snyder Avenue and Seventh Street approximately two minutes after receipt of the broadcast. A number of individuals were present at the location, of whom only the appellant was wearing a green jacket. There is no contention that the appellant was acting suspiciously.

The officer exited his vehicle and immediately searched the appellant for weapons. None were found, but as the officer searched around the appellant's ankles, he observed a small key box fall to the ground in the vicinity of appellant. The officer retrieved the box and examined it. The box proved to contain 14 packets of cocaine.

Prior to his trial for possession of a controlled substance, the appellant moved to suppress the contents of the key box as the fruit of an illegal search. The municipal court found that the search was legal pursuant to *Terry,* and that because appellant had thrown the box away, he had abandoned it and thus lacked standing to challenge the subsequent search of its contents. The appellant was convicted of possession of a controlled substance and sentenced to one year's probation. The Court of Common Pleas and the Superior Court upheld the municipal court's suppression rulings. This court granted allocatur.

■ Our standard of review of the lower courts' suppression rulings was set forth in *Commonwealth v. Cortez,* 507 Pa. 529, 532, 491 A.2d 111, 112 (1985) *cert. den.* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297:

When we review the ruling of a suppression court we must determine whether the factual findings are supported by the

record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

■ The principal issue presented by this case is the legality of the stop and frisk under Article I, § 8 of the Pennsylvania Constitution[1] and the Fourth Amendment of the United States Constitution,[2] both of which protect the individual against unreasonable searches and seizures. The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the federal Constitution, *see Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). However, because the protection afforded by the Pennsylvania Constitution may never be less than under the federal Constitution, and also because Pennsylvania has always followed *Terry* in stop and frisk cases, *see Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969), we begin our analysis with the United States Supreme Court's decision in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *Terry,* the United States Supreme Court addressed the constitutionality of the admission against a criminal defendant of evidence located during a pat-down search of a suspect for concealed weapons. The Court recognized that two important, although countervailing, interests were at stake.

The first interest was the individual's Fourth Amendment right to be free of unreasonable searches and seizures. The

1. Art. I, § 8 of the Pennsylvania Constitution provides in pertinent part: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures...."

2. The Fourth Amendment to the United States Constitution reads in pertinent part: "[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."

Court emphasized that a stop and frisk is not a *de minimis* intrusion on that right:

> [I]t is simply fantastic to urge that [a careful exploration of the outer surfaces of a person's clothing all over his or her body] performed in public while the citizen is helpless, perhaps facing a wall with his hands raised, is a petty indignity. It is a serious intrusion on the sanctity of the person which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly.

*Terry,* 392 U.S. at 16–17, 88 S.Ct. at 1877, 20 L.Ed.2d at 903.

On the other hand the Court recognized that the police must be able to protect themselves and the public against attack by armed criminals. *Terry,* 392 U.S. at 23, 88 S.Ct. at 1881, 20 L.Ed.2d at 907. The Court held that when an officer is justified in believing that the individual whose conduct he was monitoring was armed, it would be "clearly unreasonable" to deny the officer the power to take necessary measures to determine whether the officer was carrying a weapon, and to neutralize the threat. *Terry,* 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908.

■ The Court then struck a careful balance between the two competing interests, holding that an officer may conduct a limited, pat-down search for weapons when the officer has a reasonable suspicion that the individual is armed and dangerous. While the amount of information available to the police need not rise to the level of probable cause, something more than an inchoate and unparticularized hunch would be required. *Id.* The officer's suspicion must be reasonable, and based on specific, articulable facts and reasonable inferences drawn from those facts in the light of the officer's experience. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. *Terry* was recognized by this Court in *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969). In *Commonwealth v. Melendez,* 544 Pa. 323, 327–28, 676 A.2d 226, 230 (1996), we held that *Terry* also sets forth the standard for the reasonableness of a search under Art. I, § 8 of the Pennsylvania Constitution.

490

 When, as here, the underlying source of the police department's information is an anonymous telephone call, the courts have recognized that the tip should be treated with particular suspicion.[3] Thus, in *Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972), the Court observed that a tip from an informer known to the police carried enough indicia of reliability for the police to conduct a *Terry* search, even though the same tip from an anonymous informant would likely not have done so. The Court reasoned that a known informant places himself or herself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. *See also Commonwealth v. Anderson*, 481 Pa. 292, 296, 392 A.2d 1298, 1300 (1978) (distinguishing the facts before it from those of *Adams* on the ground, *inter alia*, that in *Anderson* the police were acting on an anonymous tip). As we recently observed in *Commonwealth v. Hawkins*, 547 Pa. 652, 656, 692 A.2d 1068, 1070 (1997), the anonymous tip may have been a mere prank call. Equally, it may have been based on no more than the caller's unparticularized hunch.

This does not mean that an officer may never conduct a *Terry* stop on the basis of an anonymous tip. In *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the United States Supreme Court held that a *Terry* stop may be made on the basis of an anonymous tip, provided the tip is sufficiently corroborated by independent police work to give rise to a reasonable belief that the tip was correct. Essentially, the corroboration requirement is based on the principle that because an informant is right about some things, he or she is probably right about other facts also, including the

---

**3.** The fact that the officer in this case received his information over the police radio neither establishes nor negates the existence of reasonable suspicion. As we recognized in *Commonwealth v. Queen*, 536 Pa. 315, 319–21 and n. 4, 639 A.2d 443, 445–46 and n. 4 (1994), an officer responding to a police radio bulletin is justified in conducting a *Terry* stop, even if that officer is not in possession of enough facts to meet the reasonable suspicion requirement, provided the officer who requests the first officer to make the stop has the requisite facts at his or her disposal. Conversely, if the police as a whole lack sufficient information to warrant a belief that the defendant is armed and dangerous, then the search is unreasonable.

allegation that the object of the tip is engaged in criminal activity. *White,* 496 U.S. at 331, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.

In *White,* which the Court described as a close case, the suspect matched the description of the alleged criminal, left her residence at the predicted time in a vehicle matching the informant's description and, most significantly, travelled along the most direct route to the destination that was predicted in the tip. The Court observed that because only a small number of people are generally privy to a person's itinerary, it was reasonable for the police to believe that the caller was both honest and well-informed. *White,* 496 U.S. at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.

In this case, the description of the alleged criminal was far less detailed than in *White.* The caller only described the location, the gender of the individual and the color of his jacket. Significantly, unlike the case in *White,* the caller did not predict any future behavior by the individual. Thus the only detail that the police were able to corroborate in this case was the fact that appellant was at the location described, and that he was wearing a green jacket.

In *Anderson,* the police received an anonymous tip that provided no more than a vague description of an individual, the location at which he could be found and an allegation that he had escaped from a drug rehabilitation program. We held that even though the tip was correct, the police had insufficient information at their disposal to constitute reasonable suspicion that the suspect was armed and dangerous, and that therefore the fruits of a *Terry* stop and frisk should have been suppressed. More recently, in *Hawkins,* we confronted facts very similar to those present in this case. In *Hawkins,* the Philadelphia police responded to an anonymous telephone report that there was a man with a gun at the corner of Sydenham and York Streets. The suspect was described as a black male wearing a blue cap, black jeans and a gold or brownish coat. We held that such allegations, without more,

did not constitute reasonable grounds for the police to suspect that the individual was armed and dangerous:

> If the police respond to an anonymous call that a particular person at a specified location is engaged in criminal activity, and upon arriving at the location see a person matching the description but nothing more, they have no certain knowledge except that the caller accurately described someone at a particular location.... [T]he fact that a suspect resembles the anonymous caller's description does not corroborate allegations of criminal conduct, for anyone can describe a person who is standing in a particular location at the time of the anonymous call. Something more is needed to corroborate the caller's allegations of criminal conduct.

*Hawkins,* 547 Pa. at 656–57, 692 A.2d at 1070. Thus the details provided by the caller in this case were insufficient, even when corroborated, to satisfy the reasonable suspicion standard.

The Commonwealth contends, however, that the degree of danger to the police and the public from armed criminals is so great that if an anonymous caller provides a physical description of the individual, an accurate location and an allegation that the individual is armed, a *Terry* stop is justified. That argument will not withstand constitutional scrutiny.[4] The danger to the police and public from firearms was already factored into the balance when the requirement of reasonable suspicion was articulated in *Terry.* To adopt the position that the Commonwealth urges is in reality to overrule *Terry* in favor of a lower standard of protection under the state and federal constitutions, a decision that we are not empowered to make.

4. *Compare Commonwealth v. Rodriquez,* 532 Pa. 62, 73, 614 A.2d 1378, 1383 (1992), in which we held an arrest for the sale of drugs unconstitutional, observing that "the seriousness of the criminal activity under investigation, whether it is the sale of drugs or the commission of a violent crime, can never be used as justification for ignoring or abandoning the constitutional right of every individual in the Commonwealth to be free of intrusions upon his or her personal liberty absent probable cause."

*Hawkins* [5] also involved an anonymous tip that the suspect was carrying a gun. The distinction that we drew between what criminal activity was alleged, and the probability that the allegation was true, applies here. We found the search in that case to be unreasonable, stating that:

> The fact that the subject of the call was alleged to be carrying a gun, of course, is merely another allegation, and it supplies no reliability where there was none before. And since there is no gun exception to the *Terry* requirement for reasonable suspicion of criminal activity, in the typical anonymous caller situation, the police will need an independent basis to establish the requisite reasonable suspicion.

*Hawkins,* 547 Pa. at 657, 692 A.2d at 1070.

This case is factually indistinguishable from *Hawkins.* In *Hawkins,* we held that before the police may undertake a stop and frisk on the basis of an anonymous tip of a man with a gun, the police must establish that they have a reasonable suspicion that the individual is involved in, or about to commit a crime. If the tip contains sufficient information, the police can do this by corroborating sufficient details of the tip. Otherwise, the police must investigate further by means not constituting a search and seizure. If, as a result, they acquire sufficient information to give rise to a reasonable suspicion that the individual is armed and dangerous, they may then initiate a *Terry* stop. Neither condition was met in this case, and therefore the search was illegal.

We find the Commonwealth's reliance on our decision in *Commonwealth v. Lagana,* 517 Pa. 371, 537 A.2d 1351 (1988) to be misplaced. While the suggestion was indeed made in *Lagana,* that the risk posed by firearms should be factored into the reasonable suspicion analysis, that observation was

---

**5.** In a companion case, *Commonwealth v. Kue,* 547 Pa. 668, 692 A.2d 1076 (1997), the police responded to a call that there was an Asian man wearing a striped shirt and carrying a gun at a particular intersection in Philadelphia. The police searched a man matching the description and his companions, including the defendant, who was found to be carrying a gun. *Kue* was resolved in favor of the defendant on the same basis of *Hawkins,* without reaching the issue of whether an officer may legitimately frisk the companion of an alleged criminal.

dictum. In *Lagana,* an anonymous caller provided the police with a description and location of the suspect, and stated that he was armed. When the police arrived, they observed the suspect "casing" a store using binoculars, which is precisely the sort of suspicious activity which arose in *Terry* itself. The police therefore already had the requisite reasonable suspicion to stop and frisk Mr. Lagana, even absent any allegation that he was armed.

There remains only the question of whether the cocaine seized from the appellant may nevertheless be introduced into evidence against the appellant on the grounds that he had surrendered all rights to its suppression by abandoning the key box at the time of the search. The resolution of this question is governed by our decisions in *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973) and *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769 (1996). In those cases we held that when the causative factor in the abandonment of the evidence is an unconstitutional search and seizure, the contraband must be suppressed.[6] Thus, while we accept as true the factual finding of the suppression court that the appellant deliberately released the key box while he was being searched, we nevertheless conclude that the contents should have been suppressed as the fruit of an illegal search.

Accordingly we hold that the content of the anonymous tip did not justify a *Terry* stop and frisk, and that the key box should have been suppressed as the fruit of an illegal search.

The order of the Superior Court is reversed.

NEWMAN, J., files a dissenting opinion in which CASTILLE, J., joins.

---

**6.** The Commonwealth asserts that appellant has waived the issue of whether abandonment was coerced by failing to raise it at the suppression hearing or in the petition for writ of certiorari filed in the Court of Common Pleas. Whether or not that is the case, the issue of coerced abandonment was addressed on the merits by the Court of Common Pleas and by the Superior Court. Consequently, we do not find that the issue was waived. *See American Ass'n of Meat Processors v. Casualty Reciprocal Exchange,* 527 Pa. 59, 67, 588 A.2d 491, 495 (1991).

NEWMAN, Justice, dissenting.

I respectfully dissent for the reasons expressed in my dissenting opinions in *Commonwealth v. Hawkins*, 547 Pa. 652, 692 A.2d 1068 (1997), and *Commonwealth v. Kue*, 547 Pa. 668, 692 A.2d 1076 (1997).

CASTILLE, J., joins this opinion.