J-A31013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TION LEWIS, | |
| Appellant | No. 348 MDA 2014 |

Appeal from the Judgment of Sentence February 18, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004156-2013

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 18, 2014**

Tion Lewis appeals from the aggregate judgment of sentence of five to ten years incarceration imposed by the trial court after it found Appellant guilty of persons not to possess a firearm, carrying a firearm without a license, possession of a small amount of marijuana, possession of oxycodone, and two counts of possession with intent to deliver.  We reverse.

On July 27, 2013, at approximately 3:00 a.m., Harrisburg Police received an anonymous tip that a bearded black male in a T-shirt and blue capri pants was brandishing a black handgun by Sixth and Schuylkill Streets. Police consider the area an extremely high-crime neighborhood. Corporal Thomas McGarrity responded to that location and did not find anyone matching that description.  Accordingly, Corporal McGarrity began to leave the area to respond to another call.  While driving on Maclay Street,

which also intersected with Sixth Street, the officer observed Appellant stepping onto a sidewalk. Corporal McGarrity noted that Appellant matched the description from the anonymous caller and asked for backup. He then watched Appellant enter an Exxon gas station. According to Corporal McGarrity, that gas station was a hub for violence and he had responded to multiple robberies at that location. Further, he testified that there had been shootings at that gas station. Two additional officers arrived.

The officers entered the gas station while Appellant was at the counter making a purchase. The three officers surrounded Appellant. Corporal McGarrity, with his hand on his sidearm, inquired if Appellant was armed. Appellant answered negatively. Based on Appellant's speech and eyes, Corporal McGarrity believed Appellant was intoxicated and directed Appellant to place his hands on the counter. Appellant appeared to reach with his left hand toward his waist and Corporal McGarrity ordered Appellant to put his hands on the counter. Appellant complied, and Corporal McGarrity conducted a pat-down search.[1] Corporal McGarrity immediately felt a firearm in Appellant's waistband on Appellant's left side. After the recovery of the firearm, a .45 caliber Bersa pistol, a further police search of Appellant yielded crack cocaine, twenty-nine antipsychotic pills, one oxycodone pill, and eight grams of marijuana.

_____

[1] The record contains a video recording of the interaction inside the gas station.

Appellant filed a motion to suppress, which the trial court denied. The parties then proceeded to a stipulated bench trial. The court found Appellant guilty of the aforementioned charges and sentenced Appellant on that same date to five to ten years incarceration. This timely appeal ensued. Appellant filed and served a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal and the trial court authored its opinion. Appellant's sole issue on appeal is "[w]hether the [t]rial [c]ourt erred in denying Appellant's [m]otion to [s]uppress [e]vidence where police lacked reasonable suspicion to conduct an investigative detention, or legitimate fear for officer safety to conduct a *Terry* frisk, in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution?" Appellant's brief at 5.

In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the suppression record. *Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa.Super. 2012). This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id*.

Appellant first maintains that an anonymous tip is insufficient to warrant an investigatory stop. In this respect, Appellant relies on *Commonwealth v. Hawkins*, 692 A.2d 1068 (Pa. 1997) (OAJC),

- 3 -

*Commonwealth v. Kue*, 692 A.2d 1076 (Pa. 1997) (OAJC), and

*Commonwealth v. Jackson*, 698 A.2d 571 (Pa. 1997), as well as *Florida*

*v. J.L.*, 529 U.S. 266 (2000). The plurality decisions in *Hawkins* and *Kue*

were decided on the same date with the votes of the justices involved being

identical.

In *Hawkins*, Philadelphia police received information from an

anonymous source that a black male wearing a blue hat, black jeans, and a

gold or brownish coat was at Sydenham and York Streets with a gun.[2] Police

arrived within three minutes to that precise location and observed Hawkins.

Hawkins matched the description given. Accordingly, the officer stopped and

frisked Hawkins, "finding a .22 caliber revolver in his waistband." *Hawkins*,

*supra* at 1069. The *Hawkins* plurality[3] ruled the stop illegal. The plurality

opined that when police "respond to an anonymous call that a particular

person at a specified location is engaged in criminal activity, and upon

arriving at the location see a person matching the description but nothing

more, they have no certain knowledge except that the caller accurately

described someone at a particular location." *Id*. at 1070. The *Hawkins*

---

[2] The Pennsylvania Supreme Court decision does not reference the time of day that the stop occurred. However, this Court's unpublished memorandum set forth that the stop occurred at approximately 8:40 p.m.

[3] Chief Justice Flaherty authored the lead opinion and was joined by Justices Cappy and Zappala. Justice Nigro concurred in result and Justice Newman authored a dissenting opinion joined by Justice Castille.

Court also found that the officer "had no independent reason to believe that the suspect may have been involved in criminal activity." *Id*. at 1071.

Similarly, in *Kue*, police received an anonymous tip at 2:30 a.m. that "an Asian male was 'armed with a gun' at the intersection of Second and Olney Streets in Philadelphia." *Kue*, *supra* at 1077. The tip described the individual as wearing a striped shirt. The responding officer arrived at the scene within three minutes and saw four Asian men, one of whom was wearing a striped shirt. Kue, the defendant, was not the individual in the striped shirt. The officer witnessed the men speak quickly to each other and look in different direction. He then stopped and frisked each man. The search of Kue revealed a .25 caliber firearm in his waistband.

Utilizing the same rationale as the *Hawkins* plurality, the *Kue* plurality ruled that the stop and frisk was illegal. Specifically, it held that "in order for police to act on an anonymous tip, the *Terry* requirement of reasonable suspicion of criminal activity must still be satisfied and must be independent of the telephone tip itself." *Id*. at 1078. Since "there was no independent reason to believe that criminal conduct was afoot," the officer "had no reason to search anyone[.]" *Id*.

While the *Hawkins* and *Kue* decisions were pluralities, the High Court reached a majority consensus in *Jackson*, *supra*. Therein, "[a]t approximately 10:23 p.m., a Philadelphia police officer received a police radio report of a man in a green jacket carrying a gun. Other than the

location, no additional details were provided." *Jackson*, *supra* at 572. Within two minutes of receiving the call, police arrived at the corner of Snyder and Seventh Street where the person was alleged to be located. The defendant was the only individual in a green jacket. There was no evidence that he acted suspiciously. However, the officer stopped the defendant and searched him. While the defendant was being searched, a small key box fell next to him. The box held fourteen packets of cocaine.

The majority ruled that the case was factually indistinguishable from *Hawkins*. It reasoned that the fact that the police were able to corroborate the location of the suspect and his wearing of a green jacket was insufficient to warrant a *Terry* stop. The *Jackson* Court rejected the Commonwealth's argument "that the degree of danger to the police and the public from armed criminals is so great that if an anonymous caller provides a physical description of the individual, an accurate location and an allegation that the individual is armed, a *Terry* stop is justified." *Id*. at 575. Instead, it ruled, "[t]he danger to the police and public from firearms was already factored into the balance when the requirement of reasonable suspicion was articulated in *Terry*." *Id*.

Consistent with our High Court's expression in *Jackson*, the United States Supreme Court in *J.L.* ruled that an anonymous tip that a person is carrying a gun is, without additional evidence, insufficient to uphold a police officer's stop and frisk. In *J.L.*, police received an anonymous tip that "a

young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *J.L.*, *supra* at 1377. Two officers responded and observed three black males in the area. J.L, a juvenile, was wearing a plaid shirt. "Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct. The officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements." *Id*. Despite not observing any suspicious behavior, one officer directed J.L. to place his hands up, frisked him, and found a gun. The Supreme Court rejected creating a firearm exception to *Terry*, and ruled that the stop and search violated the Fourth Amendment.

Appellant contends that this matter is indistinguishable from the above referenced cases. He maintains that police received an anonymous tip regarding a black male wearing a t-shirt and blue capri pants carrying a firearm on Sixth and Schuylkill Streets in Harrisburg. Police did not locate an individual matching that description in that specific area. While traveling to another call, Corporal McGarrity identified Appellant as a person fitting the description outlined in the anonymous tip. Appellant was not doing anything illegal or suspicious. Corporal McGarrity did not observe a bulge or firearm in Appellant's possession and merely saw him enter an Exxon convenience store. Accordingly, Appellant submits that the conduct of the officers, surrounding him at the counter, preventing his ability to leave the store, and asking him if he was carrying a gun, was an unlawful investigative detention.

The Commonwealth rejoins that the anonymous tip, combined with the high crime area, the time of the interdiction, and Appellant's hand movement toward his waist area supported the investigative detention. It asserts that this matter is akin to *In re D.M*, 781 A.2d 1161 (Pa. 2001). There, Philadelphia police received an anonymous tip that there was a man with a gun at 28th and Cecil B. Moore Avenues. The description of the person with a gun was "a black male, wearing a white t-shirt, blue jeans and white sneakers." *Id*. at 1162. The officer, who was one block from the area, promptly arrived and saw the defendant, who matched the description. The officer approached alone and asked the juvenile to approach him. Instead, the juvenile fled. Additional police arrived and stopped the juvenile. A subsequent frisk revealed a .32 caliber handgun. The Pennsylvania Supreme Court initially ruled that the stop was unlawful, but the United States Supreme Court vacated that decision.

On remand, the Pennsylvania Supreme Court ruled the stop was lawful. It held that unprovoked flight in a high crime area is sufficient to justify a stop under the Fourth Amendment. In doing so, the Court specifically noted that the anonymous tip accurately describing the juvenile and setting forth that he was carrying a gun "was insufficient to support a finding of reasonable suspicion." *Id*. at 1164. This latter scenario is at issue herein. Appellant did not flee. Furthermore, Appellant made no hand movement until after he was subject to the investigatory detention.

In addition, the Commonwealth posits that this Court's decision in ***Commonwealth v. Foglia***, 979 A.2d 357 (Pa.Super. 2009) (*en banc*), supports the suppression court's ruling. In ***Foglia***, Philadelphia police received an anonymous call at approximately 2:40 a.m. that a person was "standing on the corner of 'A' and Westmoreland dressed in dark clothing, black clothing, carrying a firearm." ***Foglia***, ***supra*** at 359. Two officers arrived in the area in less than a minute and one-half and observed Foglia dressed entirely in black and another individual in a dark gray suit. After seeing the officers approach, Foglia began to walk away from the police looking back several times, grabbing around his waist area, before sitting behind two women on some steps. This author, writing for the majority, concluded that these evasive actions in combination with the tip were enough to establish reasonable suspicion. However, Appellant made no attempt to avoid police and did not make furtive movements prior to his seizure.

The Commonwealth also denigrates our Supreme Court's decision in ***Hawkins*** by contending that the Supreme Court therein did not detail the circumstances of the stop, including the time of day of the stop. It reasons that the ***Hawkins*** decision is dated and was insensitive and "downright out of touch with reality in this day and age." Commonwealth's brief at 15 n.2. Finally, the Commonwealth argues that this matter is distinguishable from ***J.L.***, ***supra***, because there was more than a reliable anonymous tip.

Specifically, it suggests that presence in a high crime area at 3:00 a.m. in combination with the anonymous tip was sufficient to warrant a stop. We disagree and find **Jackson** and **J.L**. dispositive.

We begin by noting that in evaluating interaction between law enforcement and other citizens, Pennsylvania courts look to whether the interaction is a mere encounter, an investigatory detention, or a custodial detention, *i.e.*, an arrest. The latter is not in question herein. A mere encounter does not require police to have any level of suspicion that the person is engaged in wrongdoing. **Commonwealth v. Downey**, 39 A.3d 401, 405 (Pa.Super. 2012). At the same time, such an encounter does not carry any official compulsion for the party to stop or respond. **Id**. An investigative detention, however, subjects an individual to a stop and short period of detention. **Id**. This seizure does not involve actions that are so coercive as to comprise the equivalent of an arrest. **Id**. To conduct an investigative detention, police must have reasonable suspicion of criminal activity. **Id**.

"[T]his standard is met 'if the police officer's reasonable and articulable belief that criminal activity was afoot is linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped.'" **Commonwealth v. Kearney**, 601 A.2d 346, 348 (Pa.Super. 1992). It is well-settled that "[m]ere presence near a high crime area or in the vicinity of a recently reported crime, is not enough to warrant a **Terry**

stop." **Id**. Rather, police "must observe irregular behavior before he initiates a stop and, concurrently to his observation, he must hold a belief that criminal activity is afoot." **Id**. We consider what level of interaction occurred under a totality of the circumstances test. **Commonwealth v. Williams**, 73 A.3d 609, 615-616 (Pa.Super. 2013). This standard is an objective one, and looks to the reasonable belief of the citizen and not the subjective view of law enforcement. **Commonwealth v. Lyles**, 54 A.3d 76, 83 (Pa.Super. 2012). "In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." **Id**. at 79-80. Accordingly, we look to whether "in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." **Id**. at 79.

The suppression court found that Appellant was not subject to an investigative detention when police surrounded him, asked him if he had a gun, and directed him to put his hands on the counter. Instead, it ruled that Appellant's investigative detention began after he reached for his waist area. We find this legal conclusion to be in error. Here, we hold that Appellant was subject to an investigative detention when three police officers surrounded him at a convenience store counter, with one officer having his hand on his weapon, prevented him from exiting, questioned whether he was carrying a firearm, and ordered him to put his hands on the counter.

No reasonable person under this situation would feel free to leave. Indeed, the video of the interdiction demonstrates that it was impossible for Appellant to leave because two of the officers standing behind him were blocking the doorway.

Thus, for the investigative detention to be lawful, the officers must have developed reasonable suspicion prior to their actions. We agree with Appellant that the anonymous tip in combination with the high crime area and time of day is insufficient because the officers did not observe Appellant engage in any irregular or suspicious behavior. Rather, the officers simply observed him walk into a gas station convenience store. Hence, this case is easily distinguishable from **D.M.** where the suspect fled from police. Further, Appellant's actions prior to the stop were not akin to the suspicious behavior in **Foglia**. Absent articulable facts that Appellant himself was engaged in suspicious conduct, our case law dictates that the stop was illegal and the suppression court's legal conclusion to the contrary was error. **See Jackson**, **supra**; **Kue**, **supra**; **Hawkins**, **supra**; **J.L.**, **supra**. All the fruits of the illegal seizure must be suppressed.

Judgment of sentence reversed. Appellant's petition for permission to amend is denied as moot.[4] Case remanded. Jurisdiction relinquished.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2014

---

[4] Appellant requested to argue that his underlying sentence is illegal because it was based on a mandatory minimum statute, which has subsequently been deemed unconstitutional. Since we are reversing Appellant's conviction, his sentencing issue is moot.