J.A30034/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
   :   PENNSYLVANIA
   :
            v.   :
   :
JAMES HUNTER,   :
   :
         Appellant   :
   :   No. 3203 EDA 2014

Appeal from the Judgment of Sentence November 13, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s): CP-51-CR-0001447-2014

BEFORE: MUNDY, JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:       **FILED JANUARY 12, 2016**

Appellant, James Hunter, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench conviction of firearms offenses. Appellant challenges the trial court's denial of his suppression motion, arguing the court erred in finding an anonymous tip provided the police officer reasonable suspicion to conduct an investigative detention. We affirm.

"On January 16, 2014 at 2:50 a.m., Philadelphia Police Officer Donyell Thomas received a radio call directing him to the 4600 block of North Palethorpe Street in Philadelphia for a burglary in progress." Trial Ct. Op., 1/23/15, at 2. The officer was in uniform in a police vehicle and was

---

[*] Former Justice specially assigned to the Superior Court.

working alone. N.T. Suppression H'rg, 6/27/14, at 16. The police dispatch informed Officer Thomas that "a neighbor that lives on that particular block said he saw someone . . . force their way or get into the rear of a property on 4600." *Id.* at 13. The officer described this area as a "high crime area" with shootings and "a lot of drug traffic." *Id.* at 12. Officer Thomas did not know who called police or from which address the tip was given. *Id.* at 15.

> The call described the suspect as an African-American male wearing a black jacket, with a black bookbag. The suspect was reportedly heading northbound on Palethorpe towards Wyoming Avenue. Officer Thomas responded to Palethorpe, then traveled northbound to Wyoming Avenue. He then turned onto the 4800 block of North 2nd Street, continuing northbound, and observed Appellant matching the description of the suspect. Appellant was walking northbound, and was the only person Officer Thomas saw in the area.
>
> Officer Thomas [stopped approximately two feet from Appellant, disembarked from his vehicle,[1]] approached Appellant and asked him where he was going. Appellant responded that he was going to his bus. Officer Thomas then asked Appellant to stop.

Trial Ct. Op. at 2 (citing N.T. at 5-8).

As Appellant's argument emphasizes the sequence of the ensuing events,[2] we review Officer Thomas' testimony in detail. On direct examination, Officer Thomas first stated that after stopping Appellant, he "asked him, Are you coming from Palethorpe Street?," Appellant said yes,

---

[1] N.T. at 9. Furthermore, Officer Thomas testified there were street lights and he could see his surroundings. *Id.* at 8.

[2] *See* Appellant's Brief at 19 n.4.

and the officer "secured him for officer's safety and . . . asked him if he had any weapons on his person." N.T. at 8. On the next page of testimony, the Commonwealth asked Officer Thomas specifically when he asked Appellant if he was coming from Palethorpe Street, and the officer replied he could not recall the sequence of events. *Id.* at 9.

During the pat-down, Officer Thomas recovered from inside Appellant's jacket a "25-caliber handgun . . . loaded with six live rounds." *Id.* at 10. The officer initially testified that **after** he recovered the gun, he placed Appellant in custody inside his vehicle. *Id.* at 11. Inside Appellant's book bag, the officer found gloves, duct tape, plastic gloves, a screwdriver, a kitchen knife, and a knit hat. *Id.* When Appellant was in the vehicle, he said he "was going over to Palethorpe Street to engage in a fight[ with] some guys he knew that had lived on that block because a day prior[,] they beat him up. They roamed him as he said, quote, unquote." *Id.*

On cross-examination, Appellant confronted Officer Thomas with his preliminary hearing testimony, in which the officer stated he saw Appellant, stopped him, and then "asked him where he was coming from." *Id.* at 18. Appellant also showed the officer his "73-483" written report, which stated that after the officer asked Appellant "where he was coming from, [the officer] asked him to step into [his] patrol vehicle." *Id.* Officer Thomas agreed that "at that point," Appellant was not free to leave, and furthermore that at that point, he asked Appellant if he had any weapons. *Id.* at 19. On

recross-examination, redirect examination, and further recross-examination, Officer Thomas agreed to this chronology: he stopped Appellant, handcuffed him, placed him in the police vehicle, asked "if he had any weapon on him," and then recovered the gun from his jacket. ***Id.*** at 21-23.

Appellant was charged with firearms offenses. He filed a suppression motion, and the above-cited hearing was held on June 27, 2014. The court announced its ruling to deny the motion at the hearing. The case proceeded to a bench trial on September 5, 2014, at which the court found Appellant guilty of persons not to possess a firearm, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[3] On November 13, 2014, the court imposed an aggregate sentence of four to ten years' imprisonment and three years' probation. Appellant did not file a post-sentence motion, but took this timely appeal.[4]

Appellant raises one claim before this Court: that the trial court erred in finding Officer Thomas had reasonable suspicion to conduct an investigative detention.[5] He presents three arguments in support, which we summarize as follows. First, the anonymous tip gave only a "vague, generic,

---

[3] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), 6108.

[4] The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

[5] Appellant concedes that Officer Thomas' approach and initial question—as to where Appellant was going—were legal. ***See*** Appellant's Brief at 12, 20 ("On this point, the suppression court's conclusion should be upheld.").

incomplete description" of the suspect, and did not describe the suspect's age, height, weight, hairstyle, facial hair, gait, or any other physical trait. Appellant's Brief at 20, 40. Thus, the tip failed to provide "a particularized and objective basis" required for an investigatory detention. *Id.* at 21. The mere fact that the tipster's "description and location of" a suspect are ultimately accurate is not sufficient reliability. *Id.* at 26. Second, the anonymous "tipster's credibility and basis of knowledge could not be assessed." *Id.* at 20. "[T]here was no evidence that the tip originated in a 911 call or was otherwise traceable.[ ]" *Id.* at 40. "The suppression court could not be certain that" Officer Thomas did not "invent[ ]" the police flash report, the tip could have been given by a "prankster or a person with a grudge," and "[t]he tipster could have been a neighbor who mistakenly believed a man was trying to break into a house that was actually his own.[ ]" *Id.* at 39, 41-42. Third, "Officer Thomas failed entirely to corroborate any of the tip's allegations" "through further investigation, such as [his] own observations of and encounters with the suspect that do **not** rise to the level of a seizure." *Id.* at 20, 22-23. Appellant maintains, "Except in the most **extraordinary** circumstances, an anonymous tip **alone** cannot establish the reasonable suspicion [required for] an investigative stop." *Id.* at 22, 29 (citing, *inter alia*, **Navarette v. California**, 134 S. Ct. 1683 (2014); **Commonwealth v. Goodwin**, 750 A.2d 795 (Pa. 2000); **Commonwealth v. Hawkins**, 692 A.2d 1068 (Pa. 1997)). We find no relief is due.

This Court has stated:

> "Our review of a suppression ruling is limited to determining whether the record as a whole supports the suppression court's factual findings and whether the legal conclusions drawn from such findings are free of error." Our scope of review is limited: "we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts."

> [*Terry v. Ohio*, 392 U.S. 1 (1968),] sets the standard for the reasonableness of an investigative stop under the Fourth Amendment of the United States Constitution [and] Art. I, § 8 of the Pennsylvania Constitution. *Commonwealth v. Melendez*, . . . 676 A.2d 226, 228-229 (Pa. 1996).

> Under *Terry* and *Melendez*, it is well established that a police officer may conduct a brief investigative stop of an individual, if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. "An investigatory stop subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Such an investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion." In ascertaining the existence of reasonable suspicion, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot. If so, the officer would then be justified in conducting an investigative stop of the defendant.

> "Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability." "To have reasonable suspicion, police

officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens. Naturally, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable."

In **Commonwealth v. Jackson**, . . . 698 A.2d 571 (Pa. 1997), our Supreme Court examined at length the so-called "man with a gun" scenario: namely, an anonymous tip that a person at a particular place matching a particular description is carrying a gun. Our Supreme Court held that such an anonymous tip, without independent police corroboration producing reasonable suspicion of criminal activity, is insufficient to justify a stop and frisk. The Court reasoned as follows:

In [**Hawkins**,] the Philadelphia police responded to an anonymous telephone report that there was a man with a gun at the corner of Sydenham and York Streets. The suspect was described as a black male wearing a blue cap, black jeans and a gold or brownish coat. We held that such allegations, without more, did not constitute reasonable grounds for the police to suspect that the individual was armed and dangerous:

If the police respond to an anonymous call that a particular person at a specified location is engaged in criminal activity, and upon arriving at the location see a person matching the description but nothing more, they have no certain knowledge except that the caller accurately described someone at a particular location . . . . The fact that a suspect resembles the anonymous caller's description does not corroborate allegations of criminal conduct, for anyone can describe a person who is standing in a particular location at the time of the anonymous call. Something more is needed to corroborate the caller's allegations of criminal conduct.

> *Hawkins*, 692 A.2d at 1070. . . .
>
> [*Jackson*,] 698 A.2d at 574-575.

*Commonwealth v. Wiley*, 858 A.2d 1191, 1194-95 (Pa. Super. 2004) (some citations omitted).

In the 2014 United States Supreme Court decision of *Navarette*, a woman called 911 and reported the defendants' "truck 'ran the [caller] off the roadway.'" *Navarette*, 134 S. Ct. at 1689. The caller described the vehicle as "a silver Ford F-150 pickup" and provided the license plate number. *Id.* Two officers separately responded to the subsequent broadcast and stopped the defendants' vehicle. *Id.* at 1687. "As the two officers approached the truck, they smelled marijuana. A search of the truck bed revealed 30 pounds of marijuana." *Id.* The police arrested both the driver and the passenger. The defendants "moved to suppress the evidence, arguing that the traffic stop violated the Fourth Amendment because the officer lacked reasonable suspicion of criminal activity." *Id.*

On appeal, the High Court affirmed the suppression court's refusal to suppress the evidence, holding "the stop complied with the Fourth Amendment because, under the totality of the circumstances, the officer had reasonable suspicion that the driver was intoxicated." *Id.* at 1686. The Court reiterated:

> "[A]n anonymous tip **alone** seldom demonstrates the informant's basis of knowledge or veracity." That is because "ordinary citizens generally do not provide extensive recitations of the basis of their everyday

observations," and an anonymous tipster's veracity is "'by hypothesis largely unknown, and unknowable.'" But under appropriate circumstances, an anonymous tip can demonstrate "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop."

*Id.* at 1687 (citations omitted).

The Court stated, "The initial question in this case is whether the [anonymous[6]] 911 call was sufficiently reliable to credit the allegation that [the defendants'] truck 'ran the [caller] off the roadway.'" *Id.* at 1688. It then reasoned:

> By reporting that she had been run off the road by a specific vehicle—a silver Ford F-150 pickup, license plate 8D94925—the caller necessarily claimed eyewitness knowledge of the alleged dangerous driving. That basis of knowledge lends significant support to the tip's reliability. . . .
>
> There is also reason to think that the 911 caller in this case was telling the truth. Police confirmed the truck's location . . . roughly 19 highway miles south of the location reported in the 911 call . . . roughly 18 minutes after the 911 call[ ]. That timeline of events suggests that the caller reported the incident soon after she was run off the road. That sort of contemporaneous report has long been treated as especially reliable.

*Id.* at 1689.

In the case *sub judice*, the trial court noted Appellant's reliance on

---

[6] The caller had "identified herself by name in the 911 call recording." *Navarette*, 134 S. Ct. at 1687 n.1. However, "the prosecution did not introduce the recording into evidence," and thus both the prosecution "and the lower courts" treated her tip as anonymous. *Id.*

***Jackson*** and ***Hawkins***[7] and distinguished those cases:

> . . . In both of these cases, uncorroborated reports of individuals with weapons were not sufficient to establish reasonable suspicion of criminal activity, and therefore did not justify a search.
>
> Unlike the cases cited by Appellant, the instant case involved a report of burglary in progress. While mere possession of a firearm may not necessarily involve illegal activity, burglary is certainly criminal. The report of a burglary necessarily gives police a reasonable suspicion that criminal activity is afoot and the individual described is involved. Moreover, Officer Thomas had this report of criminal activity, a description of the suspect, and the location and movements of the suspect. This is more information than provided in ***Hawkins*** and ***Jackson***, giving rise to a reasonable suspicion that Appellant was involved in criminal activity.

Trial Ct. Op. at 5.

The trial court also noted Appellant's reliance on ***Navarette*** and reasoned:

> . . . Appellant argued that there was no indicia of reliability in the initial report of a burglary. The record, however, suggests otherwise. Although ***Navarette*** concerned a vehicle stop as opposed to a pedestrian stop, the requirement that officers have reasonable suspicion, and the factors that contribute to reasonable suspicion are the same. Officer Thomas responded to a radio call which provided very specific information, *i.e.*, the location and description of the suspect and crime. Appellant was then located mere blocks from the reported burglary, within a few minutes of the report. This establishes contemporaneity, a factor that supported the credibility of the call in ***Navarette***. Appellant matched the description of the suspect from the report, and confirmed that he had

---

[7] Appellant likewise relies on ***Jackson*** and ***Hawkins*** on appeal. Appellant's Brief at 29-31.

come from Palethorpe Street, lending further credibility. All of these factors—the totality of the circumstances—provided Officer Thomas with reasonable suspicion to investigate, and ultimately probable cause to arrest Appellant.

*Id.* at 6. We agree with the trial court's reasoning.

We agree with the trial court's emphasis that the tip reported a burglary in progress, and thus that this was merely not a "'man with a gun' scenario: namely, an anonymous tip that a person at a particular place matching a particular description is carrying a gun." *See Wiley*, 858 A.2d at 1194 (quoting *Jackson*, 698 A.2d at 574-75). We further agree with the trial court's comparison of Officer Thomas' observation of Appellant "mere blocks" from Palethorpe Street "within a few minutes of the report" to the *Navarette*'s officers' observation of the defendants' truck on the highway approximately "highway miles south of the location reported in the 911 call . . . roughly 18 minutes after the 911 call[ ]." *See Navarette*, 134 S. Ct. at 1689; Trial Ct. Op. at 6.

Furthermore, we reject Appellant's argument that Officer Thomas failed to investigate or corroborate the anonymous tip. The officer testified the police radio information said the suspect was a black male wearing a black jacket and black book bag, and "was seen walking on Palethorpe going towards Wyoming." N.T. at 6. The officer responded to "4600 Palethorpe Street" and then Wyoming Street, but did not see anyone. *Id.* at 7. Officer Thomas then saw Appellant, who matched the description, on the 4800 block

of North Second Street.  *Id.*  As stated above, Appellant concedes the officer's initial approach of Appellant was legal.  Appellant's Brief at 20.  The officer then asked Appellant if he was coming from Palethorpe Street, and Appellant responded "Yes."  N.T. at 8.  We agree with the trial court that these facts provided Officer Thomas with the reasonable suspicion to conduct an investigative detention of Appellant.  *See Wiley*, 858 A.2d at 1194-95.  Accordingly, we do not disturb the trial court's suppression ruling and affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2016