J-S19013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOAN VAZQUEZ | : | |
| | : | |
| Appellant | : | No. 3618 EDA 2017 |
| | : | |

Appeal from the Judgment of Sentence September 3, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001754-2011

BEFORE:   SHOGAN, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY SHOGAN, J.:                **FILED OCTOBER 05, 2018**

Mr. Joan Vazquez ("Appellant") appeals from the judgment of sentence entered on September 3, 2015, following his conviction by jury of Possession of a Firearm without a License, Possession of a Firearm on a Public Street in Philadelphia, and Possessing an Instrument of Crime.[1]  After careful review, we affirm.

The trial court set forth the following factual history, which is supported by our review of the record:

> On January 22, 2011, at about 6:30 p.m., Philadelphia Highway Patrolman Joseph Rapone and his partner, Officer Postowski, responded to the area of "A" and Westmoreland Streets in Philadelphia in response to a radio call.  Upon arrival, Officer Rapone saw Appellant and other males running from police.  Officer Rapone testified that the group all appeared to be attempting to elude pursuing officers.  Appellant looked in Officer Rapone's direction and immediately threw his hands up in

_____

[1]  18 Pa.C.S. §§ 6106, 6108, and 907, respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

the air. Officer Rapone drew his weapon and patted down Appellant for his safety. During the pat-down, Officer Rapone felt a hard object that he immediately recognized as a firearm as well [as a] second hard object, which prompted him to order Appellant to the ground.

Upon being ordered to lie down, Appellant spun around and fled down Westmoreland Street to "A" Street and then onto Willard Street. While fleeing, Appellant was tugging on his waistband area. He eventually turned onto Kip Street, discarding a handgun before running onto the porch of a residence where he then discarded a gun magazine loaded with live rounds.

Officer Rapone proceeded to the porch and placed Appellant under arrest. A search incident to arrest revealed Appellant was wearing a bulletproof vest which he said he was wearing because the area was dangerous and people were out to get him. Officer Rapone recovered the gun, a loaded forty-five caliber semi-automatic handgun, and the magazine. These items along with the bulletproof vest were placed on property receipts. Appellant did not have a valid license to possess a firearm.

An examination of the firearm revealed that it was operable. There were a total of twenty-one live rounds, sixteen of which were full metal jacket rounds and five hollow points, all of which were capable of being fired in the firearm Appellant discarded.

Trial Court Opinion, 7/21/16, at 2–3 (citations omitted).

Prior to trial, Appellant moved to suppress physical evidence, and the court heard arguments on that motion on August 16, 2012. On September 18, 2012, the court denied Appellant's motion and set forth the following findings of fact:

[Number 1.] On January 22nd, 2011, police officers received multiple calls that persons with guns wearing leather jackets and blue jeans were in a high crime area on or about Westmoreland and 8th Streets in the City and County of Philadelphia. These anonymous tips included information that the males were involved in shooting an 8-year-old that day. That's one.

- 2 -

Number 2. The information was revealed to the officer over his radio.

Number 3. Police Officers Rapone and also [Officer Postowski] were on duty in a marked patrol car on or about 8th and Westmoreland Streets at approximately 6:28 p.m.

Number 4. Approximately 30 seconds after receipt of one of those flash information calls, Officer Rapone and Officer [Postowski] saw [Appellant] in between parked cars.

Number 5. [Officer Postowski] watched two other police officers in pursuit of another male running eastbound on Westmoreland Street.

Number 6. [Appellant] matched the description of the individual involved in the shooting earlier that day.

Number 7. From approximately 25 feet away, Officer Rapone saw [Appellant] dipping and diving, end of quote, and trying to hide in between cars on Westmoreland Street to evade being seen by the other officers, so the officer described. [Appellant] was sunk down and then raised his shoulders in an attempt to hide, then looked at the officers, according to the testimony.

Number 8. Suspicion of [Appellant] -- suspicion of [Appellant] based on his conduct, in combination with [Appellant] fitting the radio call, Officer Rapone approached [Appellant] with his gun drawn.

Number 9. As soon as [Appellant] saw Officer Rapone turn, he put his hands up and said, "It's not me," end quote. Information for his safety (sic) based on the radio call that persons with a gun had been involved in a shooting earlier that day, were in the area.

Number [10]. The officer felt what he believed to be a gun in [Appellant]'s pocket and another metal object.

Number [11]. Officer Rapone instructed [Appellant] to get down on the ground. Instead, [Appellant] fled.

Number [12]. Officer Rapone pursued [Appellant] for 30 seconds and then lost sight of [Appellant].

Number [13]. During the foot chase, Officer Rapone observed [Appellant] discard a firearm on Willow Street.

Number [14]. Officer Rapone also saw [Appellant] throw a magazine with ten .45 caliber bullets to the ground.

Number [15]. Eventually [Appellant] stopped running because other officers were in the area. Officer Rapone arrested [Appellant] and found him to be wearing a bulletproof vest.

Number [16]. For all the reasons stated, I deny the motion to suppress because under the totality of the circumstances, the officer had reasonable suspicion and probable cause. Officer Rapone had probable suspicion [sic] to approach [Appellant] and to conduct a patdown for his own safety. The radio description was of males in leather jackets and blue jeans. [Appellant] still fit the description and, furthermore, [Appellant] acted suspiciously by trying to hide from other police officers in between cars. Moreover, after Officer Rapone felt a gun and another metal object in [Appellant]'s pants during the patdown, [Appellant] was told to go to the ground, but he ran instead. Therefore, Officer Rapone had probable cause. . . .

Notes of Testimony ("N.T.") (Findings of Fact), 9/18/12, at 4–6.

Following his trial and conviction on May 21, 2015, the trial court sentenced Appellant to incarceration for a term of three to seven years on the possession-without-a-license conviction, a consecutive term of incarceration for two to five years on the possession-of-a-firearm-on-a-public-street conviction, and five years of probation on the possessing-an-instrument-of-crime conviction. N.T. (Sentencing), 9/3/15, at 31. Appellant filed a timely

post sentence motion, which the trial court denied after counsel for Appellant repeatedly failed to appear. Post Sentence Motion Order, 10/21/15. Ultimately, Appellant's right to appeal was reinstated *nunc pro tunc*. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal. Order, 10/7/17. Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents a single question for our review:

> Whether the suppression hearing court erred in its conclusion of law that the arresting officer lawfully subjected Appellant to a stop and frisk based on a reasonable suspicion where, as found by the court, the officer first approached and detained Appellant at gunpoint before subjecting him to a "pat down" – and thus effectuated an arrest of Appellant without probable cause?

Appellant's Brief at 2.

In support of his appeal, Appellant essentially makes two arguments. First, Appellant contends that the suppression court erred when it found that Officer Rapone had reasonable suspicion to detain Appellant. Appellant's Brief at 15–18. Second, Appellant argues that if reasonable suspicion did exist, the suppression court erred because Officer Rapone did not engage in a stop and frisk, but rather, "a full-blown arrest" when he approached Appellant with his weapon drawn. *Id*. at 18.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.

- 5 -

> Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts. ***Commonwealth v. Williams***, 2008 PA Super 6, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted).
>
> Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony. ***See Commonwealth v. Clemens***, 2013 PA Super 85, 66 A.3d 373, 378 (Pa. Super. 2013).

***Commonwealth v. Williams***, 176 A.3d 298, 315 (Pa. Super. 2018).

Appellant relies upon ***Florida v. J.L.***, 529 U.S. 266 (2000), ***Commonwealth v. Jackson***, 698 A.2d 571 (Pa. 1997), ***Commonwealth v. Hawkins***, 692 A.2d 1068 (Pa. 1997), and ***Commonwealth v. Kue***, 692 A.2d 1076 (Pa. 1997) in support of his argument that the suppression court erred when it found the arresting officer had reasonable suspicion to stop Appellant. Appellant's Brief at 15–18. Each of these cases is readily distinguishable from the instant case. Indeed, in each case upon which Appellant relies, the court specifically noted that the defendant was not acting suspiciously and the stop was based entirely on an anonymous tip or radio report. ***See J.L.***, 529 U.S. at 266 ("Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct"); ***Jackson***, 698 A.2d at 572 ("There is no contention that the appellant was acting suspiciously"); ***Hawkins***, 692 A.2d at 1071 ("Here, no facts were offered which supported the suspicion created by the anonymous call."); ***Kue***, 692 A.2d at 1077 ("[The arresting officer] saw no indication of criminal activity").

In the instant case, the suppression court expressly found that Appellant matched the description of an individual involved in the shooting of a child earlier that day and that Appellant was acting suspiciously by "dipping and diving" and trying to evade police by hiding between cars. N.T. (Findings of Fact), 9/18/12, at 4–6. Thus, Appellant's reliance on those cases is misplaced, and Appellant has failed to show that the suppression court erred when it denied his motion to suppress for lack of reasonable suspicion.

Appellant also argues that even if this Court were to find that *Hawkins*, *Jackson*, and *Kue* do not apply, the suppression court erred because Officer Rapone did not stop and frisk Appellant, but rather effectuated a "full-blown arrest" because Officer Rapone had drawn his weapon and pointed it at Appellant. Appellant's Brief at 18. Appellant's Brief at 18. Contrary to Appellant's assertion, the fact that Officer Rapone drew a gun on Appellant does not turn an investigatory stop into an arrest. *Commonwealth v. Johnson*, 849 A.2d 1236, 1237–1239(Pa. Super. 2004) (finding no arrest where multiple police officers approached defendant in his car with guns drawn); *Commonwealth v. Dennis*, 433 A.2d 79, 80 n.5 (Pa. Super. 1981) ("Likewise, it cannot be said that whenever police draw weapons the resulting seizure must be deemed an arrest rather than a stop…") (quoting 3 Wayne F. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 9.2, at 30); *Commonwealth v. Ferraro*, 352 A.2d 548, 551 (Pa. Super. 1975) ("Moreover, we do not believe that simply because [the officer] withdrew his

service revolver while directing [the] appellant to alight from the Lincoln turned this investigatory stop into an arrest.").

For all of the reasons set forth above, judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/18